Ismail Muslim ALI, (Formerly Ishmael S. LaBeet) Appellant in No. 80–1190

v.

Winston GIBSON, Commissioner of Public Safety, Appellant in Nos. 80–1189 & 80–1204

United States Bureau of Prisons, (Intervenor in D. C.)

Nos. 80–1189, 80–1190 and 80–1204.

United States Court of Appeals, Third Circuit.

Argued June 10, 1980.

Decided Oct. 2, 1980.

Julio A. Brady (argued), Sp. Counsel, Virgin Islands Dept. of Law, Charlotte Amalie, St. Thomas, V. I., for appellant–cross–appellee Winston Gibson.

Earl Kaplan, Senior Legal Advisor, General Litigation and Legal Advice Section, Crim. Div., Frank E. Devine (argued), Atty., Dept. of Justice, Washington, D. C., for intervenor United States Bureau of Prisons.

George M. Alexis (argued), Federal Public Defender, Charlotte Amalie, St. Thomas, V. I., for appellee–cross–appellant Ali.

Before ADAMS, Van DUSEN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

In this appeal we have been asked to examine the legality of the transfer of Ismail Muslim Ali (formerly known as Ishmael X. LaBeet) from a prison in the Virgin Islands to a United States Penitentiary in Atlanta, Georgia and to determine whether the conditions he faced both in the Georgia prison and the United States Penitentiary in Marion, Illinois, to which he was subsequently transferred, violated the eighth amendment to the United States Constitution. We find that his transfer was made in accordance with statutory and constitutional requirements and will therefore reverse the portion of the district court's decision which sustained this claim. We will affirm the district court's conclusion that Ali has not met his burden of proof on his challenge of the conditions of prison facilities.

### I. Background

On August 13, 1973, Ali and four co–defendants were convicted of eight counts of first degree murder, four counts of first degree assault and two counts of robbery. They were sentenced that day to eight consecutive life terms of imprisonment on the murder counts and four fifteen–year terms of imprisonment on the other counts, to be served concurrently with the sentences of the murder counts.[1] Ali and his co–defendants were held in a detention facility in Anna's Hope, Virgin Islands operated by the Government of the Virgin Islands (the Government) during their trial. While in the Anna's Hope facility, they were in the custody of the United States Marshal for the District of the Virgin Islands. On the day of sentencing, Ali and his co–defendants were sent to the Presidio Penitentiary in Rio Piedras, Puerto Rico, a United States government facility. They remained there until approximately September 6, 1973, when they were moved to the United States Penitentiary in Atlanta, Georgia. Ali's co–defendants were moved shortly thereafter to other federal institutions; Ali remained in the Atlanta penitentiary until 1977.

In December 1973 Ali's four co–defendants were returned temporarily to Atlanta, so that they might jointly confer with their attorneys on their direct appeal. During this time, the five defendants filed under the federal statute, 28 U.S.C. § 2241,[2] a

---

**1.** This court affirmed the convictions but remanded for further proceedings on a new trial motion. *See Government of Virgin Islands v. Gereau,* 502 F.2d 914 (3d Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). Upon remand, the new trial motion was again denied and we affirmed that denial. *See Government of Virgin Islands v. Gereau,* 523 F.2d 140 (3d Cir. 1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976). This court affirmed the denial of a motion for a reduction of the life sentences made by Ali, *see Government of Virgin Islands v. Gereau,* 592 F.2d 192 (3d Cir. 1979), and a motion made by two of his co–defendants. *See Government of Virgin Islands v. Gereau,* 603 F.2d 438 (3d Cir. 1979).

**2.** 28 U.S.C. § 2241 provides in pertinent part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge with-

petition for a writ of habeas corpus in the United States District Court for the Northern District of Georgia, in which they challenged the legality of their transfer from the Virgin Islands. The district court dismissed the petition and the Court of Appeals for the Fifth Circuit affirmed. *United States ex rel. Gereau v. Henderson*, 526 F.2d 889 (5th Cir. 1976).[3]

In September 1976, Ali filed a second petition for a writ of habeas corpus in the District Court for the Virgin Islands, under 28 U.S.C. § 2241; it is the subject of this appeal. The district court held that it did not have jurisdiction to consider Ali's claim. Ali appealed, this court reversed holding that the district court did not have jurisdiction to hear the claim under 28 U.S.C. § 2241, the federal habeas corpus statute, but that Ali had stated a claim for relief under Virgin Islands law, and that the district court had jurisdiction to consider the petition under the Virgin Islands habeas statute, V.I. Code Ann. tit. 5 § 1301.[4] We therefore reversed and remanded for further proceedings. *Ali v. Gibson*, 572 F.2d 971 (3d Cir. 1979). In March 1977, during

his first appeal, Ali was transferred to the United States Penitentiary at Marion, Illinois. He remained there until June 1978 when he was transferred to a Virgin Islands facility in Fort Christian, Virgin Islands for a hearing on this petition, pursuant to V.I. Code Ann. tit. 5 § 1309.

On remand, the district court held that Ali had been transferred in violation of the Virgin Islands law and the due process clause of the United States Constitution.[5] The court held that Ali's transfer was not legal because Alphonso Christian, then the Commissioner of Public Safety (hereafter referred to as the Commissioner or Christian) and Ali's legal custodian, did not have statutory authority to order Ali's transfer to a federal facility and that even if the Commissioner had the power, he had not in fact authorized the transfer. It also held that the transfer provision of the Code, if read to permit transfers to federal facilities, would have been in violation of the United States Constitution, as applied to Ali, because it did not provide for a hearing prior to the transfer. The court ordered the peti-

---

in their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

3. The Court of Appeals explained the defendant's challenge as follows:

Appellants summed up their habeas complaint in the District Court this way:

Relators, who upon sentencing, were remanded to the custody of the Attorney General of the United States Virgin Islands, were summarily transferred to the custody of respondent Bork in violation of their rights under the Fifth, Sixth, Eighth, Ninth, Tenth, and Fourteenth Amendments to the Constitution of the United States. Among other things, the transfers took place without requisite due process hearing and have denied to Relators their rights to effective assistance of counsel, to due process of law and to equal protection of the law, as well as subjected them to cruel and unusual punishment. Moreover, power express[ly] reserved to the states ha[s] been usurped and exercised by the Federal Government.

In this court, appellants have focused on only two of these contentions. First, the transfer of a territorial prisoner to a federal prison offends state sovereignty and is beyond the power of Congress to authorize,[5] and, second, the summary nature of their

transfers violates their right to minimal elements of due process.

[5] Appellants' related contention, that the transfers to federal custody of Virgin Islands convicts is not authorized by Virgin Islands statute, is belied by 5 V.I.C. § 4501–assuming *arguendo* that non–authorization would even raise a federal claim. See note 2, *supra*.
*United States ex rel. Gereau v. Henderson*, 526 F.2d 889, 892–93 (5th Cir. 1976) (brackets in original). Although the Fifth Circuit focused primarily on the federal issues raised by the petitioner, it discussed the claim under Virgin Islands law briefly in footnotes. The court assumed *arguendo* that the claim was a federal claim which could be raised in the petition and resolved it against the prisoners. *Id.* at 892 n.2, 893 n.5.

4. V.I. Code Ann. tit. 5 § 1301 provides:

Every person unlawfully imprisoned or restrained of his liberty under any pretense whatever, may procure a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint.

5. On remand the United States Bureau of Prisons was granted permission to intervene. It has since actively participated in the proceedings.

tioner confined in the Virgin Islands and ordered the Director of the Bureau of Corrections to issue rules and regulations under which the advisability of any future transfer of Ali would be determined.[6] The court further held that Ali had not met his burden of proof on the challenge to the conditions of confinement. *Ali v. Gibson*, 483 F.Supp. 1102 (D.V.I.1979).

The Commissioner appealed. He argues that the transfer was authorized by the statute and that the Commissioner had in fact approved the transfer. Ali also appealed. He argues that the district court erred in its decision on the conditions of his confinement; the United States Bureau of Prisons and the Commissioner ask us to affirm that decision.

## II. *The Transfer*

This appeal raises several issues regarding the validity of the Ali's transfer from a Virgin Islands facility to the federal penitentiary in Atlanta, Georgia. The dispute principally concerns two issues: first, whether as a factual matter the transfer was approved by the Commissioner, and second, whether the statute under which the Commissioner purportedly acted granted him the authority to approve the transfer. The district court answered both questions negatively. We disagree.

## A.

■ We start our review of the district court's findings mindful of our limited role in the fact–finding process. The district court's findings must be affirmed unless they are clearly erroneous. *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir. 1972). While this standard of review severely restricts our role, it does not extinguish it. Where, as here, the findings pertaining to the Commissioner's approval of Ali's transfer are not supported by the record, and indeed, the record supports contrary findings, we must reverse.

Ali and his co–defendants, who came to be known as the Fountain Valley Five,

were tried and convicted for an armed daylight attack on September 6, 1972 at the Fountain Valley Golf Course in St. Croix, Virgin Islands. The assailants robbed guests and employees and opened fire, at random, as they exited the golf course. Eight persons were killed and four were wounded. Not unexpectedly, the attack on the golf course and the subsequent trial of the Fountain Valley Five were the object of considerable controversy and publicity. The fear was great, the anxiety high and the burden on the officials involved extraordinary. They were fearful that the prisoners, who faced considerable sentences for their violent acts, would not be reluctant to use violence if they had an opportunity to escape. They were also afraid that some citizens, outraged by the crimes, would try to attack the prisoners.

During the trial, the prisoners were held in a detention facility in Anna's Hope, Virgin Islands. They were in the actual custody of the United States Marshal, although the Commissioner retained constructive custody. At some unidentified point, it was determined that the prison facilities on the Virgin Islands were not adequate to hold the prisoners if they were convicted and that if they were convicted, they would be immediately transferred by the United States Marshals to a federal facility off–island. In accordance with this decision, the defendants were flown to Puerto Rico immediately upon being sentenced and were incarcerated in a federal penitentiary.

Precisely who made the decision to move the prisoners is the subject of controversy. The district judge held that U. S. Chief Deputy Marshal Krim Ballentine, who had been in charge of the U. S. Marshals guarding the defendants, made the decision with other officials from the Office of the U. S. Marshal. He found that the decision was made without notice to the Commissioner and was, therefore, made in violation of the trial court's order committing the "defend-

---

**6.** In 1977 the penal authority was transferred from the Department of Public Safety to a newly created Bureau of Corrections. Thus, the Director of the Bureau of Corrections has legal custody of Ali. *See* n.8, *infra*.

ants 'to the custody of the Commissioner of Public Safety, or his authorized representatives.'" *Quoted in*, 483 F.Supp. at 1108. It was the district court's conclusion that Ali "was, in effect, 'shanghied' out of" the territory. *Id.*

Alphonso A. Christian testified at the hearing that he verbally approved Ballentine's plan to remove the prisoners to a federal facility. The district judge discounted this testimony because he felt it conflicted with Ballentine's testimony. The court stated:

> Called to the stand to testify, the now Chief Deputy Marshal Ballentine gave quite a different account. He denied ever having conferred or agreed with Commissioner Christian to remove the prisoners upon their conviction to a federal facility. He went on to state that he was totally unaware of how they were transported to Atlanta, on whose order it had been done; and by whom it was accomplished.

*Id.* The court concluded:

> Because the former Commissioner admitted that there might have been some

erosion of his memory on this matter, because of passage of time, and further because the Marshals were in by far the better position to say how, when and why the prisoners were taken to Puerto Rico, I accept as my finding the version of the United States Marshals.

*Id.* We do not agree that Ballentine's testimony conflicts with Christian's account. Ballentine testified that he "talked to Commissioner Christian, Alphonso Christian, on the telephone and told him what our intentions were . . . . [That] we had devised a plan if they were found guilty we were going to take them off the island immediately." Tr. at 44–45. Ballentine further stated that the Commissioner told him that "if they [the Fountain Valley Five] were convicted that he didn't want custody of them. . . . And he said it will be his intention to remove them immediately." *Id.* at 46. Thus, rather than contradicting Christian's testimony, Ballentine's testimony confirms it.[7]

We note that Ballentine explained that he did not participate in the transfer of the prisoners to the United States; that he was

---

**7.** The testimony was as follows:

Q. [Attorney for Commissioner of Public Safety]
[Were] you aware of any plan, however that was formulated, by someone under you in terms of what would happen if there was a conviction in this case?
A. [Krim Ballentine] Yes, sir.
Q. Will you tell us how you were informed, if you were informed of that?
A. Well, previously I had talked to Colonel Anderson who was our contact with Public Safety and asked him if a conviction did come what was his intentions because we would immediately lose control and turn them back over.
Q. Turn them over to him?
A. To the Department of Public Safety. And he instructed that it was a matter that would have to be taken up with Mr. Christian, that he was a liaison and he couldn't make that decision. I then talked to Commissioner Christian, Alphonso Christian, on the telephone and I told him what our intentions were and that–
THE COURT: What do you mean our intentions?
THE WITNESS: Well, we had devised a plan if they were found guilty we were going to take them off the island immediately.

THE COURT: You devised that before? You devised that plan before you spoke to the Commissioner?
THE WITNESS: Yes, Sir.
Q. When you say plan, was it any specific plan?
A. No actual physical specifications other than the fact that we had certain information stating certain things were going to occur. We had proposed if these things were really, were going to occur, that we will in fact, the minute the conviction occurred, if convicted, we will take them off the island immediately.
Q. These were your tentative plans?
A. Tentative plans of what we intended to do.
Q. You did speak to the Commissioner?
A. Yes.
Q. And what did the Commissioner relate to you in terms of his intentions and his desire?
A. Well, he said that if they were convicted that he didn't want custody of them, he didn't know where he could house them that would be secure, or what to do with them. And he said it will be his intention to remove them immediately.
Tr. at 44–46.

only involved in the transfer of the prisoners to Puerto Rico.[8] On appeal, Ali argues that this testimony shows that Christian did not approve the move to the mainland and thus, the transfer was not legal. We do not agree. The evidence merely proves that Ballentine did not participate; no inference as to Christian's actions can be made. More importantly, this testimony does not negate the clear unrebutted evidence which shows that Christian knew of and approved the transfer of the prisoners to the custody of federal authorities.

Ali also argues that even if we find that Christian verbally approved the transfer, we nevertheless must find that Christian's delegation of his responsibility to the U. S. Marshals was so substantial that he lost constructive custody of the prisoner. The record does not support such a claim. There is no evidence that actions were taken without Christian's approval; there is no evidence that Christian relinquished all control; and there is no evidence that Christian, or any of his successors, could not have ordered Ali returned to the Virgin Islands at any time.

We will therefore reverse the district court's factual finding on the transfer issue because it is clearly erroneous.

### B.

Ali also challenged his transfer on the ground that Commissioner Christian lacked the statutory authority to transfer him to a federal facility. The district court concluded that the only Virgin Islands provision authorizing prisoner transfers, at the time of Ali's transfer, covered only Virgin Islands facilities and that it did not authorize transfers to facilities outside of the jurisdiction of the Commissioner of Public Safety.

At the time of Ali's transfer, the Virgin Island Code provided:

> Persons convicted of offenses against the government of the Virgin Islands shall be committed, for such terms of imprisonment as the court may direct, to the custody of the Commissioner of Public Safety or his authorized representative, who shall designate the places of confinement where the sentences shall be served.
>
> The Commissioner of Public Safety may designate *any available, suitable, and appropriate institutions.* He may order any inmate transferred from one institution to another.

Act of May 16, 1957, Act No. 160, 1957 V.I. Laws (previously codified at V.I. Code Ann. tit. 5 § 4501) (hereinafter Section 4501) (emphasis added).[9] Our inquiry into the

---

**8.** He testified as follows:

Q. [Attorney for Ismail Muslim Ali] Now, you said that you had devised some plan, written or unwritten, that in the event that Mr. Ali and his co–defendants were convicted, that they will be taken off–island to a facility in the United States.
A. [Krim Ballentine] No, Sir.
Q. Taken off–island.
A. Taken off–island.
THE COURT: But their ultimate designation was to have been according to your plan, a facility on the mainland United States.
THE WITNESS: No, Sir, we would not be involved in that. Even with Federal prisoners, we would not be.
THE COURT: I know you wouldn't be involved in making the decision of where, but what was this plan?
THE WITNESS: To hold them in Puerto Rico.
THE COURT: Until when?
THE WITNESS: Until somebody told us what to do with them. As far as I was concerned, they were under our custody and we took them to Puerto Rico. They were not put in anybody else's custody by us. We could go and get them at anytime and bring them back.
Tr. at 48–49.

**9.** On August 27, 1973, fourteen days after Ali was moved to Puerto Rico, the statute was amended to provide:

The Commissioner *is also authorized to use the facilities of the United States Bureau of Prisons* in accordance with agreement between the Virgin Islands and the United States Department of Justice when the Commissioner determines that detention and/or correctional facilities within the Virgin Islands are inadequate to serve the best interests of the inmate or the general welfare of the Territory.

Act of Aug. 27, 1973, Act No. 3469, 1973 V.I. Laws 235 (emphasis added).

It was amended again in 1977 when the Legislature for the Virgin Islands established a Bu-

scope of this section starts, as all inquiries involving statutory construction should, with the language of the statute. *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980). The language of Section 4501 gives the Commissioner the authority to designate "any available, suitable, and appropriate institutions." It makes no qualification on what facilities may be used, whose control the facilities should be under, or where the facilities should be located. It qualifies placements only to the extent that they are "available, suitable, and appropriate." Thus, on its face the statute does not restrict the Commissioner's authority as Ali contends and it would permit Ali's transfer to a federal facility.

We have not been able to locate any legislative reports or debates concerning the enactment of Section 4501; nor have the parties presented us with any. However, events surrounding the adoption of the section suggest that it was intended to permit the Commissioner to transfer prisoners to federal facilities. In 1947, the Government Secretary of the Virgin Islands inquired of the Office of the United States Attorney [10] whether Virgin Islands law permitted the transfer of Virgin Islands prisoners to federal institutions. The Acting Attorney General responded:

> It is the opinion of this office that, in the absence of local legislation conferring

power on some official to transfer prisoners, it would be necessary to obtain some sort of consent from the prisoners themselves if the possibility of legal complication is to be minimized. For such a worthy purpose, however, I believe that legislation could be obtained with reasonable dispatch.

1 V.I.Op.A.G. 224, 225 (1947). It is reasonable to assume that Section 4501, enacted a few years later, was intended, in part, to deal with this problem. Indeed, authorities in the Virgin Islands have acted on the assumption that Section 4501 provided the government with authority to order transfers to federal facilities. In 1965, the U. S. Bureau of Prisons and the Government for Virgin Islands entered into an agreement for the transfer of prisoners, purportedly under the authority of this statute. *See* Contract No. Jlc–20755, Apr. 1, 1965, *reprinted in* Brief for Appellant–Cross Appellee, at A1–A3. A number of prisoners have been transferred to federal facilities pursuant to this agreement. *See* 483 F.Supp. at 1111 n.16. The district court relied heavily on a subsequent amendment to Section 4501 to support its view of Section 4501. That amendment was enacted on August 27, 1973, fourteen days after Ali was moved to Puerto Rico. It changed Section 4501 so it would provide:

> The Commissioner *is also authorized to use the facilities of the United States*

---

reau of Corrections and transferred the penal authority from the Department of Public Safety *to the newly created Bureau of Corrections.* Act of Oct. 28, 1977, Act No. 4054, § 4503, 1977 V.I. Laws 247 (previously codified at V.I. Code Ann. tit. 5 § 4503). *The Director was*

(g) ... authorized to use the facilities of the United States Bureau of Prisons in accordance with agreement between the Virgin Islands and the United States Department of Justice when the Commissioner [sic] determines that detention and/or correctional facilities within the Virgin Islands are inadequate to serve the best interests of the inmate or the general welfare of the Territory. At the time of the district court's ruling the Code had been amended to give the "sentencing authority" responsibility for transfer. Act of Jan. 26, 1978, Act No. 4087, 1978 V.I. Laws 10. *See* 483 F.Supp. at 1143. A subsequent amendment vested the responsibility in the Director of the Bureau of Corrections. Act of

Jan. 16, 1980, Act No. 4399. This amendment also required the Director to "promulgate rules and regulations establishing the procedure by which he will make determinations" about transfers.

*These changes do not affect the disposition* of this portion of the appeal.

**10.** *The district court explained:*

13. Government Secretary was formerly the title in the Virgin Islands of the official one of whose functions was that of a Lieutenant Governor, the present designation.

14. In former times United States Attorney was legal advisor to the Executive Branch of the Government of the Virgin Islands. This was before the advent of the Department of Law of the Virgin Islands, headed by the Attorney General of the Virgin Islands.

483 F.Supp. at 1109–10 nn.13 & 14.

*Bureau of Prisons* in accordance with agreement between the Virgin Islands and the United States Department of Justice when the Commissioner determines that detention and/or correctional facilities within the Virgin Islands are inadequate to serve the best interests of the inmate or the general welfare of the Territory.

Act of Aug. 27, 1973, Act No. 3469, 1973 V.I. Laws 235 (emphasis added). The court reasoned that the amendment, which permits territorial/federal transfers, would have been unnecessary if the prior statute already authorized them. The debates of the Legislature of the Virgin Islands when the amendment was enacted do not support the district court's theory. *Reprinted in* Brief for Appellant–Cross Appellee at A13–A19. Instead, statements by Mr. Reisinger, an Assistant Attorney General for Legislation, reveal that the amendment was prompted by a request from the United States Bureau of Prisons for "a clearer definition of authority from the Government of the Virgin Islands to place Virgin Islands prisoners in the care and custody of the Federal Bureau of Prisons." *Id.* at A14–A15. The debates show that the Legislature did not view its action as one which broadened the Commissioner's authority, rather it viewed the amendment merely as a clarification.

As further support for its interpretation, the district court noted that Section 4501 was modeled after 18 U.S.C. § 4082 (hereinafter Section 4082) and that a companion provision to Section 4082, 18 U.S.C. § 4002 (hereinafter Section 4002), had not been adopted with it. Section 4082 provides:

(b) *The Attorney General may designate* as a place of confinement *any available, suitable, and appropriate institution or facility, whether maintained by the Federal Government or otherwise,* and whether within or without the judicial district in which the person was convicted, and may at any time transfer a person from one place of confinement to another. (emphasis added).

Section 4002, at the time Section 4501 was enacted, provided:

For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress, *the Director of the Bureau of Prisons may contract,* for a period not exceeding three years, *with the proper authorities of any State, Territory, or political subdivision* thereof, for the imprisonment, subsistence, care, and proper employment of such persons.

Act of June 25, 1948, 62 Stat. 847, c. 645 (emphasis added).[11] Relying on the rule set forth in *Government of Virgin Islands v. Carr,* 451 F.2d 652 (3d Cir. 1971), the district court held that the Virgin Islands statute should be construed in the same manner as the federal statute. It decided that under the federal scheme transfers between federal and state facilities could not be made under Section 4082, that Section 4002 was needed in order to make such a transfer. The district court held that the absence of a provision equivalent to Section 4002 in the Virgin Islands Code meant that the Commissioner could not authorize a transfer to a facility not within his jurisdiction. 483 F.Supp. at 1110.

We disagree and conclude that reliance on *Carr* is misplaced. In *Carr* we were presented with the issue of what type of corroborating evidence of a rape victim's identification of the defendant, was required by a Virgin Islands statute, which was modeled after the New York Penal law. We held that when the Virgin Islands Code copied verbatim a provision from another jurisdiction, the Virgin Islands provision meant what the courts of the other jurisdiction had construed their provision to mean. 451 F.2d at 656. The *Carr* rule presumes that when one statute has been copied after another, it was to have the same meaning. When as here, however, the legislature deviated from the parallel scheme, and adapted it to its own needs, a

---

11. The statute was amended in 1978 to substitute "Attorney General" for "Director of the Bureau of Prisons." Act of Nov. 9, 1978, § 8, 92 Stat. 3463.

different interpretation may have been intended. Further, in *Carr* we dealt with a man's criminal attack upon a woman. This type of crime is the same in the Virgin Islands as it is in New York. The statute in this case, however, touches upon the complex relationships between the United States and its territories. While those relationships may be similar in some respects to federal/state relationships, in many significant ways they are different. The *Carr* rule therefore cannot be blindly applied in this instance. *Cf. Williams v. Dowling*, 318 F.2d 642 (3d Cir. 1963) (applying rule in wrongful death actions); *James v. Henry*, 157 F.Supp. 226 (D.V.I.1957) (applying rule interpreting statute of limitation). The federal scheme, as originally adopted, gave authority for inter–prison transfers to the Attorney General of the United States under Section 4082 and authority to contract for prisoner's subsistence, care and employment to the U. S. Director of the Bureau of Prisons under Section 4002. The federal scheme may have been designed to grant power to these two persons. In contrast, the Commissioner of Public Safety for the Virgin Islands was solely responsible for the transfers of Virgin Islands prisoners and two grants of authority were not necessary. We, therefore, conclude that the absence of a provision similar to Section 4002 in the Virgin Islands Code does not limit the Commissioner's authority under Section 4501, even assuming *arguendo* that transfers outside of the federal system can only be made under Section 4002.

The district court also found it significant that a "portion of 18 U.S.C. § 4082, which our codifiers did not adopt, authorized" federal prisoners to be moved to institutions " ' . . . *whether maintained by the Federal Government or otherwise.* ' " 483 F.Supp. at 1110 n.15 (emphasis in original). Again, we do not find the difference significant. The omitted phrase is simply inapplicable to the Virgin Islands and its omission does not reflect a desire to limit the Commissioner's authority.

Judge Christian did note that for a substantial period of time his view of the transfer provision was the opposite of the holding he made in the opinion below. At 483 F.Supp. 1111 n.16 he said:

> The writer must confess, perhaps primary guilt with respect to the practice he now condemns (i.e. transferring Virgin Islands prisoners to federal institutions). While United States Attorney the writer initiated the negotiations which resulted in the then Director of the Federal Bureau of Prisons, agreeing to accept and hold selected prisoners. Moreover, as judge he recommended such transfers on repeated occasions prior to the August 27, 1973 amendment to § 4501.

We believe that Judge Christian's earlier construction of the law was correct and that the prior transfers under 4501 were valid.

In conclusion, the clear language of the statute and its limited history show that Section 4501 gave Commissioner Christian the power to transfer Ali to a federal facility.

### C.

■ Ali contends that even if the statute provides for the authority to transfer the prisoners, and Commissioner Christian approved his transfer, his transfer nevertheless was not legal because it violated the due process clause of the United States Constitution, in that he was not given a hearing prior to his transfer. The Supreme Court has held quite explicitly that unless a statute confers upon a prisoner the right to be incarcerated in a particular prison, the Constitution does not require a hearing prior to a transfer. *See Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montayne v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). The district court distinguished *Meachum* and *Montagne* on the ground that a greater hardship was involved in a transfer from the Virgin Islands to the United States mainland than in transfers wholly within the mainland. This difference, he held, gave rise to a right to a hearing. While we are sensitive to the difficulties that may result from an off–island transfer, we do

not believe that they present any more difficulties than a transfer from California to Maine, which can be made, under current law, without a hearing. The *Meachum* and *Montagne* decisions are based on the Court's conclusion that a prisoner has no liberty interest in remaining at a particular prison. If the prisoner can be lawfully held in the facility to which he has been transferred, he cannot object to that transfer, even if the transfer results in his being placed in a more restrictive or less accessible facility. This analysis is equally applicable to Ali and is not affected by the difficulty of the move. Therefore, no hearing was required by the Constitution.

### D.

The district court ordered the Director of the Bureau of Prisons to submit, for its approval, rules and regulations governing transfer hearings, issued pursuant to an amendment to the Virgin Islands Code. Act of Jan. 26, 1980, Act No. 4339. The Commissioner argues that the district court overstepped its authority in this portion of its order. We do not sit as a committee of experts of the American Correctional Association, which might applaud and approve the type of policies which Judge Christian's decree required. But rather, we sit as judges with limited authority. Because we have found Ali's transfer permissible as a matter of both statutory and constitutional law, we have no basis for approving the rules and regulations ordered and approved by the district court. Thus, we need not address the issue of whether the trial judge overstepped his authority when he required the rules to be submitted. We will therefore order that the portion of the order as to the regulations be vacated.

### E.

The district court ordered Ali returned to the Virgin Islands, unless otherwise transferred in accordance with its directions. As we noted above, we hold that Ali's original transfer was legally permissible and we therefore will vacate this portion of the district court's order.

### III. *Conditions of Confinement*

■ Ali's petition for a writ of habeas corpus asserts that the conditions at both the Atlanta, Georgia facility and the facility at Marion, Illinois constituted cruel and unusual punishment in violation of the eighth amendment to the United States Constitution.[12] The United States Bureau of Prisons, which operates these facilities, contends that this issue is moot because Ali is no longer confined there. The Commissioner stated at oral argument that Ali would be returned to a federal penitentiary assuming the Bureau of Corrections has legal authority to order the transfer. Thus, the claim is still alive. *See Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

■ On the eighth amendment claim the district court stated:

A super abundance of testimony was adduced on Ali's behalf in his effort to support his 8th Amendment contention. Most of that testimony was from the mouths of fellow inmates. As might be expected, when tested in the crucible of cross examination and measured against standards of reasonableness, much of it can be characterized as prison scuttlebutt and cell block yarns. As to none of the several bases on which the 8th Amendment violations were grounded can it be said that petitioner prevailed by a preponderance of the evidence.

483 F.Supp. at 1114. Ali argues that although the district court made this statement early in its discussion of the eighth amendment, it nevertheless, contradicted this finding in the rest of the opinion. We do not agree. Ali has not demonstrated to this court that Judge Christian's findings were clearly erroneous. Indeed, the court repeated its finding that Ali had not met his burden of proof at a number of points in

---

**12.** The eighth amendment to the United States Constitution provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

**1136**

the opinion. *See, e.g. id.* at 1114, 1116, 1117 & 1119. The discussion on the eighth amendment law underlying Ali's claims is clearly dicta; it is not a rejection of this finding.

Accordingly, we will reverse the January 29, 1980, and May 1, 1980, orders of the district court dealing with the transfer issue, but approve that court's conclusion concerning the conditions of confinement of Ali. Also, we remand the case to the district court for prompt entry of an appropriate order denying, on this record, Ali's petition for a writ of habeas corpus in accordance with this opinion.