Jose Labrador CARDENAS, Petitioner,

v.

George C. WIGEN, Respondent.

Arquimedes PEREZ, Petitioner,

v.

George C. WIGEN, Respondent.

Adolfo R. MARTINEZ, Petitioner,

v.

George C. WIGEN, Respondent.

Civil Action Nos. 95–3917,
95–3500 and 95–3202.

United States District Court,
E.D. Pennsylvania.

April 8, 1996.

Jose Labrador Cardenas, F.C.I. Schyulkill, Minersville, PA, Pro Se.

Brian Carroll, U.S. Attorney's Office, Philadelphia, PA, for George C. Wigen in No. 95–3917.

Arquimedes Perez, F.C.I. Schyulkill, Minersville, PA, Pro Se.

Brian Carroll, U.S. Attorney's Office, Philadelphia, PA, James G. Sheehan, Assistant U.S. Attorney–Civil Division, Philadelphia, PA, Kathleen D. Hallam, U.S. Attorney's Office, Philadelphia, PA, for George C. Wigen in No. 95–3500.

Adolfo R. Martinez, F.C.I. Schyulkill, Minersville, PA, Pro Se.

Brian Carroll, U.S. Attorney's Office, Philadelphia, PA, James G. Sheehan, Assistant U.S. Attorney–Civil Division, Philadelphia, PA, for George C. Wigen in No. 95–3202.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Petitioners, Jose Labrador Cardenas, Arquimedes Perez and Adolfo R. Martinez are federal prisoners. Pursuant to 28 U.S.C. § 2241,[1] they have each individually filed a petition for writ of habeas corpus. Petitioners' claims stem from disciplinary action taken against them after contraband was found in the dormitory unit shared by Petitioners and nine other inmates. In their petitions, Mr. Cardenas, Mr. Perez and Mr. Martinez allege violations of their constitutional and civil rights as well as violations of prison regulations. Specifically, each petition asserts the following claims: (1) denial of due process; (2) denial of equal protection; (3) double jeopardy; and (4) violation by the Board of Prisons of its own rules, regulations, policies and customs. As Petitioners' cases all stem from the same incident and involve common questions of law and fact, Petitioners' claims will be considered together in this memorandum. With regard to Petitioners' equal protection, double jeopardy and violation of prison rule claims, the Court will approve and adopt the Report and Recommendation of the Magistrate Judge assigned to each case. The Court will also approve and adopt each Magistrate Judge's Report and Recommendation regarding Petitioners' due process claims, but not for the reasons set forth therein and only as qualified by this memorandum.[2] Petitioners will be denied habeas corpus relief.

## I. BACKGROUND

On December 13, 1994, Correctional Officer Robert Wright was conducting a routine room search of Room 215 in Building 5741 at the Federal Correctional Institute, Fort Dix, when he discovered a five-inch sharpened metal rod with a two-inch taped handle attached to the end along with a quart of nickel grey paint in the common area shared by Petitioners and nine other inmates. Mr. Cardenas, Mr. Perez, Mr. Martinez and their nine cellmates denied any responsibility for the materials discovered.[3] After a hearing on the matter, Petitioners, as well as each of their cellmates were found guilty of violating prison Codes 104 ("Possession of a Sharpened Instrument or Weapon") and 305 ("Possession of Anything Not Authorized"). The disciplinary hearing officer imposed a sanction on each Petitioner consisting of 60 days disciplinary segregation with 30 days suspended pending 180 days of clear conduct on the weapons offense and 15 days disciplinary segregation with 15 days suspended pending 180 days of clear conduct for the unauthorized material violation.

Although there was no direct evidence that any individual inmate was responsible for the forbidden materials, Petitioners and their cellmates were adjudged guilty of the charged offenses based upon Program Statement 5270.7 ("Inmate Discipline and Special Housing Units"), which provides that when contraband is discovered, all inmates residing in the room are mutually responsible

1. Under § 2241, a District Court may not extend a writ of habeas corpus to a prisoner *unless*

 (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

 (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

 (3) He is in custody in violation of the Constitution or laws or treaties of the United States; or

 (4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

 (5) It is necessary to bring him into court to testify or for trial.

2. As discussed, *infra* note 4, the Court specifically disapproves of each Magistrate Judge's finding that Petitioners' guilt was supported by "some evidence."

3. Petitioners allege that inmate Gregory Dejesus told the disciplinary hearing officer that the knife in question was owned by inmate Lorenzo Batista. Mr. Batista denied the charge.

if the contraband cannot be identified as belonging to a specific individual. The principle embodied by Program Statement 5270.7, known as "constructive possession," *see White v. Kane* 860 F.Supp. 1075 (E.D.Pa. 1994), *aff'd,* 52 F.3d 319 (3d Cir.1995), is grounded in notions of collective guilt, i.e., all members of a group are responsible for an offense when the specific offender can not be identified. *See Hamilton v. O'Leary,* 976 F.2d 341, 347 (7th Cir.1992) (Posner, J., dissenting); *Ustrak v. Fairman,* 781 F.2d 573, 575 (7th Cir.), *cert. denied,* 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 47 (1986).[4]

4. The Court specifically disapproves of that portion of each Magistrate Judge's Report and Recommendation finding that the 8.3% (one in twelve) probability that any one of the Petitioners was the inmate responsible for the contraband would satisfy the Due Process Clause.

In *Superintendent, Mass. Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985), the Supreme Court held that *decisions of prison officials which result in the loss of an inmate's good time credits must be supported by "some evidence"* in order to comport with due process. The Court noted that in "[a]scertaining whether this standard is satisfied … the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56, 105 S.Ct. at 2774 (emphasis added).

In the absence of direct evidence pointing to an inmate's guilt, the "some evidence" standard of *Hill* may be satisfied by application of the constructive possession doctrine. *See Hamilton v. O'Leary* 976 F.2d 341 (7th Cir.1992). In *Hamilton,* plaintiff brought suit after he and his three cellmates were found guilty by their prison disciplinary board of possessing six homemade weapons discovered in a large vent in their cell even though there was no direct evidence linking plaintiff or any of his cellmates to the contraband. In affirming the judgment of the district court dismissing plaintiff's claim, the *Hamilton* majority adopted a probability approach based upon the number of prisoners having access to the area where the contraband was found. The Court determined that the facts presented to the prison hearing board indicated that there was a 25% (one in four), probability that the plaintiff was responsible for the discovered contraband. *Id.* at 346. The Court held that this probability constituted "some evidence" of guilt as required by *Hill. Id.* Writing for the majority, Judge Manion reasoned that at least in cases where "contraband is found where only a few inmates have access," use of the constructive possession doctrine to satisfy the *Hill* standard is "unproblematical." *Id.* at 345 (citing *Hill,* 472 U.S. at 456–57, 105 S.Ct. at 2774–75 (*three* inmates observed fleeing from the scene of an assault); *Mason v. Sargent,* 898 F.2d 679, 680 (8th Cir. 1990) (contraband found in locker shared by *two* inmates)); *see Lasley v. Godinez,* 833 F.Supp. 714 (N.D.Ill.1993) (contraband discovered behind panel located above inmate's cell door presented one in *two* chance of guilt—contraband belonged either to inmate or individual who occupied the cell before him); *Harms v. Godinez,* 829 F.Supp. 259 (N.D.Ill.1993) (contraband found bagged with trash in commissary work area staffed by *six* inmates).

While the *Hamilton* Court's approach may be appropriate where only a small number of inmates are potentially guilty of the offense charged, as the number of inmates potentially guilty of the offense increases, i.e., as the probability that any individual inmate is the one responsible for the contraband decreases, use of the constructive possession fiction to satisfy the *Hill* "some evidence" standard becomes tenuous. In his Report and Recommendation for Mr. Perez's case, Magistrate Judge Smith, while finding that the *Hill* standard had been satisfied, recognized that this case "stretches the [probability] rationale to a one-in-twelve [or an 8.3%] chance of actual guilt." (Report and Recommendation, 95 CV 3500, doc. no. 12 at 6) Similar due process concerns over the elasticity of the probability approach have been echoed by other courts. *See, e.g., White v. Kane,* 860 F.Supp. 1075, 1079 n. 5 (E.D.Pa.1994), *aff'd,* 52 F.3d 319 (3d Cir. 1995) (finding that the probability approach would prove "problematic" where the disciplined inmate's cell was unlocked at the time of the cell search and every prisoner in the cell block had access to the inmate's cell); *Harms,* 829 F.Supp. at 263 ("Were we writing on a clean slate we would be sorely tempted to agree" that a one in six or 16.7% chance of guilt does not satisfy the *Hill* standard.); *cf. Zavaro v. Coughlin,* 970 F.2d 1148 (2d Cir.1992) (where prison riot occurred in large mess hall occupied by at least one hundred inmates, witnesses' statements that "every inmate" participated did not provide "some evidence" of plaintiff's guilt). In fact, in *Hamilton,* even as the Seventh Circuit validated use of the probability approach to satisfy the Supreme Court's mandate in *Hill,* at the same time it expressed doubt about its viability in all cases. Although the Court found a 25% probability of guilt adequate to uphold the decision of the prison disciplinary board, it also reasoned that a 3.1% (one in thirty-two) probability would not constitute "some evidence" against any particular inmate. *Hamilton,* 976 F.2d at 345. In his dissent, Judge Posner contended that on the record, plaintiff's probability of guilt was no greater than 12.5% (one in eight), and concluded, "[t]hat is not my idea of 'some evidence.'" *Id.* at 347.

With no direct evidence on the record linking any of the Petitioners to the contraband, the basis for the disciplinary board rulings here at issue was derived solely from application of the constructive possession doctrine. However, in this case, the probability that any one of the

After exhausting their administrative remedies, Mr. Cardenas, Mr. Perez and Mr. Martinez filed the habeas corpus petitions here at issue.

## II. DISCUSSION

■ Although a prisoner's rights "may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime." *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Among the constitutional protections prisoners retain are those safeguarded by the Due Process Clause. *Id.* at 556, 94 S.Ct. at 2974–75. Consequently, while in custody, prisoners may not be further deprived of life, liberty, or property without due process of law. *Id.* (citations omitted).

■ A violation of a prisoner's liberty interests may be redressed by writ of habeas corpus. The "Great Writ" is "an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439 (1973). Procedurally, it supplies the mechanism by which prisoners may challenge "the length of their custodial terms." *Fields v. Keohane*, 954 F.2d 945, 949 (3d Cir.1992); *Barden v. Keohane*, 921 F.2d 476, 478–79 (3d Cir.1991) (habeas corpus petition actionable

when prisoner "is in custody and he attacks the term of that custody"). Therefore, to the extent that Petitioners here argue that the punishments imposed on them by the disciplinary board lengthened the terms of their confinement, their claims are the proper subject of a habeas corpus petition. *Martinez v. Wigen*, 95 CV 3202, doc. no. 7 at 3–5 (Order Memorandum dated Aug. 16, 1995) (Robreno, J.).

Petitioners contend that the sanctions imposed on them by the disciplinary board affected their liberty interests in the following ways: (1) their custodial classifications were changed; (2) they were transferred to another federal correctional institution; and (3) their ability to earn good time credits in the future was negatively impacted.[5] Petitioners argue that the disciplinary board impinged upon these liberty interests without affording them due process of law and, therefore, that they are entitled to habeas corpus relief.[6]

■ When an imprisoned person is the subject of a disciplinary hearing that may result in the loss of a liberty interest subject to protection under the Due Process Clause of the Fourteenth Amendment,[7] that prisoner must be afforded the following safeguards: (1) advance written notice of the disciplinary charges; (2) an opportunity,

---

twelve inmates was responsible for the contraband is so statistically insignificant as to have virtually no probative value. Here the 8.3% (one in twelve), probability that any individual Petitioner committed the offenses is only half as great as the 16.7% (one in six), probability which was reluctantly found acceptable in *Harms* and ⅓ as great as the 25% (one in four), chance of guilt validated as sufficient under *Hill* by the *Hamilton* majority. Under these circumstances, the Court can not say that there was "some evidence" to support the disciplinary board's decision that Petitioners were guilty of the violations charged. However, because the Court also finds that no liberty interests of Petitioners have been adversely affected by the discipline imposed on them, *see infra* § II, habeas corpus relief will be denied in each case.

5. In general, a prisoner who has complied with prison regulations is entitled to credit toward the service of his sentence as a reward for his good conduct. Credits so awarded are referred to as "good time credits." 18 U.S.C. § 3624(b); *see* 18 U.S.C. §§ 4161–4166 (repealed 1987); *United*

States v. Newby, 11 F.3d 1143, 1145 & n. 1 (3d Cir.1993), *cert. denied, Barber v. United States*, — U.S. —, 114 S.Ct. 1841, 128 L.Ed.2d 468, and *cert. denied, Newby v. United States*, — U.S. —, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994); *Fields v. Keohane*, 954 F.2d 945, 947 & 948 n. 3 (3d Cir.1992).

6. The record indicates that ultimately, each Petitioner served thirty days in disciplinary segregation. This punishment, which will not "inevitably affect the duration" of Petitioners' sentences does not constitute "the type of atypical, significant deprivation" in which a liberty interest "might conceivably [be] create[d]." *Sandin v. Conner*, — U.S. —, — – —, 115 S.Ct. 2293, 2300–02, 132 L.Ed.2d 418 (1995).

7. In the present case, Petitioners are federal prisoners and, therefore, the due process protections of the Fifth Amendment and not the Fourteenth Amendment attach to their cases. This distinction is not important, however, because for the purposes of this case, the due process analysis under both Amendments is identical.

when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Wolff,* 418 U.S. at 563–67, 94 S.Ct. at 2978–80.

In the present case, Petitioners do not claim that they were denied any of the procedural requirements set forth in *Wolff.* Rather, Petitioners argue that their liberty interests have been violated because they were each disciplined based on evidence insufficient to link them to the contraband found in their cell. *See supra* note 4. As discussed below, the Court finds that Petitioners do not have a liberty interest in maintaining their custodial classifications or in serving their sentences at a particular correctional facility. While the Court agrees that Petitioners' claims regarding the effect of the discipline on their already earned good time credits do implicate their liberty interests, in that the revocation of good time credits necessarily lengthens the term of a sentence, nothing in the record indicates that any good time credits which Petitioners may have already earned were impacted in any adverse way.

 The Supreme Court has held that an inmate has "no legitimate statutory or constitutional entitlement" to any particular custodial classification which is sufficient to invoke due process even if a change in classification would impose a "grievous loss" on the inmate. *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976). According to the Court, Congress has given federal prison officials full discretion to control the classification of prisoners residing in their institutions. *Id.* (citing 18 U.S.C. § 4081). Therefore, both under the Constitution and by statute, to the extent that Petitioners seek restoration of their former custodial classifications as a remedy in itself, they are not entitled to habeas corpus relief and their petitions will be denied.

 Similarly, the claim by Petitioners that their transfer from FCI, Fort Dix to FCI, Schuylkill was in violation of their constitutional rights also must fail. Pursuant to 18 U.S.C. § 3621(b), the Bureau of Prisons has the power to direct the confinement of federal prisoners "in any available facility and may transfer a prisoner from one facility to another at any time." *Prows v. Federal Bureau of Prisons,* 981 F.2d 466, 469 n. 3 (10th Cir.1992), *cert. denied,* ── U.S. ──, 114 S.Ct. 98, 126 L.Ed.2d 65 (1993).[8] The authority placed in the Bureau by § 3621(b) invests the Bureau with "wide discretion to designate the place of confinement for purposes of serving federal sentences of imprisonment." *Barden,* 921 F.2d at 483.[9] More-

---

8. Section 3621(b) provides:

 The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets the minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the [federal] sentence—(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.... The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal

or correctional facility to another. 18 U.S.C. § 3621(b).

"[T]he listing of factors in § 3621(b) was not intended 'to restrict or limit the Bureau in the exercise of its existing discretion so long as the facility meets the minimum standards of health and habitability of the Bureau, but intends simply to set forth the appropriate factors that the Bureau should consider in making the designations.'" *Barden v. Keohane,* 921 F.2d 476 at 482 (3d Cir.1991) (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 141, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3325).

9. Section 3621(b) replaced 18 U.S.C. § 4082(b), effective November 2, 1987. Under § 4082(b), the Attorney General was given the power to direct the place of a prisoner's confinement. Pursuant to § 4082(b), the Attorney General had the authority "to transfer federal prisoners from one place of confinement to another at any time for any reason whatsoever or for no reason at all." *Brown–Bey v. United States,* 720 F.2d 467, 470 (7th Cir.1983). Although unlike § 4082(b), § 3621(b) lists specific factors which should be

over, prisoners have "no liberty interest in remaining at a particular institution." *Ali v. Gibson,* 631 F.2d 1126, 1135 (3d Cir.1980), *cert. denied,* 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 117 (1981) (prisoner transferred from Virgin Islands prison to federal prison in Georgia) (citing *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (intrastate transfer of state prisoner); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) (intrastate transfer of state prisoner)); *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (interstate transfer of state prisoner); *Brown–Bey v. United States,* 720 F.2d 467, 470 (7th Cir.1983) (applying principles underlying the Supreme Court's decisions in *Olim, Montanye,* and *Meachum* to hold that "[d]ue process does not require a hearing before federal prisoners may be transferred from one federal correctional institution to another"). "If the prisoner can be lawfully held in the facility to which he has been transferred, he cannot object to that transfer, even if the transfer results in his being placed in a more restrictive or less accessible facility." *Ali,* 631 F.2d at 1135. With no statutory right or constitutionally protected liberty interest in remaining at FCI, Fort Dix, because Petitioners can lawfully be held at FCI, Schuylkill, they can not seek habeas corpus relief from their transfers regardless of the circumstances under which their transfers occurred and regardless of any hardship they allege the transfers have caused them.

■ Petitioners' final claim is that the discipline imposed on them negatively impacted their good time credits. In *Preiser v. Rodriguez,* the Supreme Court held that prisoners challenging the cancellation of their good time credits were challenging the length of their confinement and, therefore, that their claims were the proper subject of a petition for writ of habeas corpus. *Preiser,* 411 U.S. at 487–88, 93 S.Ct. at 1835–36. Petitioners' averments aside, however, as the record of each Petitioners' case currently stands, there is no indication that the discipline imposed on Petitioners either revoked or adversely affected any good time credits

which Petitioners may have already earned. To the extent that Petitioners conjecture that their ability to earn good time credits in futuro may be detrimentally affected by the discipline imposed, such claims are rejected as speculative.

## III. CONCLUSION

As the Court has concluded that no liberty interests of Petitioners have been impacted by the discipline imposed on them by the disciplinary hearing board in this case, each Petitioner's petition for writ of habeas corpus will be denied.

An appropriate order shall be entered.

### *ORDER*

**AND NOW,** this 8th day of **April, 1996,** upon consideration of the Report and Recommendation of Magistrate Judge Powers in the case of *Cardenas v. Wigen* (95 CV 3917, doc. no. 5), the Report and Recommendation of Magistrate Judge Smith in the case of *Perez v. Wigen* (95 CV 3500, doc. no. 12) and the Report and Recommendation of Magistrate Judge Scuderi in the case of *Martinez v. Wigen* (95 CV 3202, doc. no. 16), it is hereby **ORDERED** that the Court **APPROVES** and **ADOPTS** the Report and Recommendation of the Magistrate Judge assigned to each case as qualified by the memorandum issued by the Court regarding the above captioned cases on this day.

The original Order shall be filed under case number 95–3917. A copy of this Order shall be filed under case numbers 95–3500 and 95–3202.

### AND IT IS SO ORDERED.

considered before a transfer is directed, there is no indication that § 3621(b) invests any right in a prisoner not to be transferred or otherwise

limits the ability of the Bureau of Prisons to transfer a prisoner after it has determined that such a transfer is appropriate. *See supra* note 8.