**Edward HAMILTON, Plaintiff–
Appellant,**

v.

**Michael O'LEARY, Michael P. Lane,
Vern Scott, et al., Defendants–
Appellees.**

**No. 91–1993.**

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1992.

Decided Sept. 28, 1992.

Rehearing and Rehearing En Banc
Denied Dec. 30, 1992.

John P. Ratnaswamy (argued), Christopher W. Zibart, Hopkins & Sutter, Chicago, Ill., for plaintiff-appellant.

Arthur Zaban, Asst. Atty. Gen., Tanya Solov (argued), Office of the Atty. Gen., Civ. Appeals Div., Chicago, Ill., for defendants-appellees.

Before POSNER and MANION, Circuit Judges, and BURNS, Senior District Judge.[*]

MANION, Circuit Judge.

Plaintiff-appellant Edward Hamilton, a former prisoner at the Stateville Correctional Center, brought a Section 1983 action against various prison officials involved in the revocation of his good time credits. Hamilton had some good time credits revoked after the prison disciplinary board, the Adjustment Committee, found him guilty of possession of six homemade weapons. Hamilton's amended complaint alleges that the defendants violated due process by revoking his good time credits without

---

[*] The Honorable James M. Burns, Senior District Judge for the District of Oregon, is sitting by designation.

"some evidence" pointing to his guilt. The district court dismissed Hamilton's amended complaint, with prejudice, for failure to state a claim, *Hamilton v. Scott*, 762 F.Supp. 794 (N.D.Ill.1991), and Hamilton appeals. Because the complaint and its attachments establish that the Adjustment Committee's finding of guilt was supported by "some evidence," we affirm.

## I.

We review the grant of a motion to dismiss *de novo*, accepting as true all well-pleaded factual allegations and drawing inferences in favor of the plaintiff. *Prince v. Rescorp Realty*, 940 F.2d 1104, 1106 (7th Cir.1991). "However, we are not obliged to ignore any facts set forth in the complaint [or its attached exhibits, *see* Fed.R.Civ.Pro. 10(c) ] that undermine the plaintiff's claim." *R.J.R. Services Inc. v. Aetna Casualty and Surety Co.*, 895 F.2d 279, 281 (7th Cir.1989); *see also Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir.1974) ("If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."). As stated in the complaint and its exhibits, the relevant facts are a follows:

In December 1984, Hamilton was a prisoner with three cellmates in Cell C–227 at the Stateville Correctional Center ("Stateville") in Joliet, Illinois. Cell C–227 is on the second of four galleries—that is, there are two floors of cells above the second gallery and one floor of cells below. From Cell C–227, Hamilton and his cellmates have access to a large vent. The vent runs the entire vertical length of the four galleries, from the fourth gallery down to the first gallery, and between two cells on each floor. Thus, Hamilton alleges, the prisoners in eight cells, a total of 32 prisoners, have access to some part of the vent.

On December 10, 1984, a general "shakedown" was conducted at Stateville. That morning, Hamilton "heard items being thrown into the vent from other cells." While searching Hamilton's cell, two correctional officers opened the vent and found a 16½" steel pipe, a 7½" file, an 11" sharpened rod and three 9½" shanks. Later that day a different correctional officer, Captain Lescester Hardin, wrote up an Inmate Disciplinary Report (known as a "ticket") on each of the four prisoners in Cell C–227. Hamilton and his three cellmates were charged with possession of dangerous contraband in violation of Illinois Department of Corrections Rule 504A–104. The ticket charging Hamilton, which is attached to his complaint, states only that the six weapons were found in the cell; it does not state that the weapons were found in the vent. Hamilton received a copy of the ticket that evening but refused to sign it; immediately thereafter, Hamilton told Hardin that the weapons did not belong to him or any of his cellmates.

On December 17, 1984, a Stateville Adjustment Committee composed of defendants Vern Scott, Samuel Ingram and Abraham Flagg held disciplinary hearings for Hamilton and his three cellmates. At his hearing, Hamilton denied having anything to do with the weapons. He testified that the weapons had been found in the vent—not on him and not in the cell; and that the two correctional officers who found the weapons would so testify if called. Hamilton also asked why the prisoners in the cell next to his, Cell C–226, had not been charged and requested that the weapons be checked for fingerprints. No other witnesses were called.

The Adjustment Committee found Hamilton guilty and gave him the same punishment as his cellmates: 60 days of segregation and 60 days reduction in grade. The committee also recommended that 60 days of good time credit be revoked. The Adjustment Committee reported its decision on an Adjustment Committee Summary form which is also attached to the complaint. In the section labeled "Reasons," the committee wrote: "Inmate denied guilt to the report. Also the Committee notes inmate is assigned to Cell C–227 and is responsible for whatever is found in the cell."

The Adjustment Committee's order was subject to review by defendant Michael O'Leary, the warden of Stateville. In addition, the Adjustment Committee's recommendation to revoke good time credit had to be approved by the Illinois Department of Corrections Administrative Review Board. On December 18, 1984, O'Leary modified the decision of the Adjustment Committee. He approved the 60 days reduction in grade and the recommendation to revoke 60 days of good time credit, but disapproved segregation. On February 22, 1985, the Administrative Review Board (acting through defendant Michael Lane, the Director of the Illinois Department of Corrections) approved the revocation of good time credit. In approving Hamilton's punishment, both O'Leary and Lane relied entirely on the Adjustment Committee's reasoning. Hamilton was thus reduced in grade for 60 days and had 60 days of good time credit revoked.

Hamilton made repeated efforts to overturn his punishment. He filed two grievances with the Stateville Institutional Inquiry Board, but both were denied because Hamilton did not attend the two hearings on them. Hamilton alleges that he did not attend the hearings because he was not given a pass to attend either hearing. He also wrote letters to the Administrative Review Board and O'Leary. Two different Adjustment Committees did consider, without hearings, whether Hamilton's revoked 60 days of good time credit should be restored. The first committee made no recommendation. But on July 15, 1985, the second committee, with O'Leary's approval, recommended to Lane that the credit be restored. This recommendation was based on Hamilton's overall record which included no other Inmate Disciplinary Report. On August 2, 1985, Lane partially accepted the recommendation and restored 30 days of Hamilton's good time credit. The other 30 days were never restored. In addition, Hamilton was prevented from earning an additional 30 days of good time credit because of his 60 day reduction in grade. Hamilton was released from Stateville on parole on August 16, 1985; the parole ended on October 17, 1989.

On August 14, 1985, Hamilton filed a *pro se* Section 1983 complaint. After some procedural mishaps, the district court appointed counsel who filed an amended complaint on May 4, 1990. The amended complaint alleges that the Adjustment Committee's determination was supported by no evidence other than the finding of the weapons in the vent to which 32 prisoners had access. The complaint seeks a declaration that the defendants violated the Fourteenth Amendment when they punished Hamilton knowing that there was no evidence of his guilt and damages for the extra 60 days he was incarcerated because of the defendants' actions. The defendants filed a Rule 12(b)(6) motion to dismiss which the district court granted, with prejudice, on March 29, 1991. The district court reasoned that the Inmate Disciplinary Report and the Adjustment Committee Summary form, attached to and therefore treated as part of the complaint pursuant to Fed.R.Civ.Pro. 10(c), demonstrate that the committee's decision was supported by "some evidence," thus defeating Hamilton's due process claim. *Hamilton*, 794 F.Supp. at 799–801.

## II.

■ Illinois state prisoners have a statutory right to receive good time credits, Ill.Rev.Stat. ch. 38, ¶ 1003–6–3, and such a state-created entitlement to good time credits is a liberty interest protected by the Fourteenth Amendment. *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Where a prison disciplinary hearing may result in the loss of good time credits, due process requires that the inmate receive: (1) advance written notice of the claimed violation; (2) the opportunity to call witnesses and present documentary evidence, when consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Id.* at 563–66, 94 S.Ct. at 2978–79. In addition, the revocation of good time credit "does not comport with the minimum requirements of due process unless the findings of the prison disciplinary board are supported

by *some evidence* in the record." *Superintendent, Mass. Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) (citation omitted, emphasis added).

■ Hamilton's amended complaint alleges that the defendants "impos[ed] punishment on him when they knew that there was no evidence that Hamilton was guilty of the disciplinary infraction of which he was charged." If we took this allegation as true, Hamilton certainly has stated a cause of action. But, as the district court stated, *Hamilton,* 762 F.Supp. at 799, the allegation is contradicted by the Inmate Disciplinary Report and the Adjustment Committee Summary form attached as exhibits to the complaint. The Summary explicitly states that the Adjustment Committee read the Inmate Disciplinary Report made by Hardin. This "ticket" states that on December 10, 1984 at 12:40 p.m., Officer Hardin found six weapons in Cell C–227 while he "was shaking down resident Hamilton." The Summary also states that the Adjustment Committee's decision was based on the ticket and the prison's constructive possession rule which holds Hamilton "responsible for whatever is found in the cell." The ticket, together with constructive possession, is "some evidence" of Hamilton's guilt.

Hamilton argues, however, that the constructive possession rule cannot provide a sufficient basis for the Adjustment Committee's decision in this case because the weapons were found in the vent to which 32 inmates had access. In the abstract, we must agree with Hamilton's contention. The proposition that constructive possession provides "some evidence" of guilt when contraband is found where only a few inmates have access is unproblematical. *See, e.g., Hill,* 472 U.S. at 456–57, 105 S.Ct. at 2774–75 (three inmates seen fleeing

from the scene of an assault); *Mason v. Sargent,* 898 F.2d 679, 680 (8th Cir.1990) (contraband found in locker shared by two inmates). If, for example, only two inmates had access to the vent, there is a 50% probability that each inmate is guilty; a 50% probability amounts to "some evidence." But if, as Hamilton alleges, the weapons could have been tossed in the vent by any one of 32 inmates, then there is only a 3.1% chance that Hamilton is guilty; we doubt that a 3.1% chance is "some evidence" of guilt.

The problem with Hamilton's argument is that he did not tell the Adjustment Committee that he heard the weapons being thrown in the vent from other cells. Neither did he tell them that 32 inmates had access to the vent, and there is nothing in the amended complaint from which such knowledge could be inferred. The only evidence before the committee was the ticket and Hamilton's testimony. According to the complaint, Hamilton testified that: (1) he had no knowledge of the weapons; (2) the weapons were found in the vent; and (3) the correctional officers, if called, would confirm that the weapons were found in the vent. Hamilton contends that it can reasonably be inferred from this and other allegations in the amended complaint that the Adjustment Committee was aware of the significance of the vent. Hamilton told the Adjustment Committee that the weapons were found in the vent. Since the Adjustment Committee members worked at Stateville, Hamilton reasons, it is reasonable to infer that they were familiar with the construction of the prison and therefore knew that weapons found in the vent could belong to any one of 32 inmates.[1] Such an inference, however, is too much of a stretch even for a motion to dismiss. Although four of the defendants worked in

---

1. We also note that it is highly improbable that all of the 32 inmates could have placed the weapons in the vent so that they could be reached from Hamilton's cell. There were 8 prisoners on the floor below Hamilton who allegedly had access to the vent, and 16 prisoners with access on the two floors above Hamilton. Although we do not know much about the construction of the vent, the laws of nature tell

us it would be difficult for these 24 prisoners to get the six weapons in the part of the vent accessible from Hamilton's cell. The most likely scenario is that one (or more) of the prisoners in Hamilton's cell or the cell next to Hamilton was the owner of the weapons—that gives Hamilton a 1 in 8, or 12.5% chance, of guilt. But, of course, all this is speculation; and we need not speculate to affirm the district court.

the prison, Hamilton does not allege that they ever saw or were familiar with the layout of the vent; absent such an allegation, we doubt that the defendants spent their time at Stateville investigating the engineering of the prison's vents.[2]

Our review of the Adjustment Committee's decision is very narrow. We decide only "whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill,* 472 U.S. at 455–56, 105 S.Ct. at 2774 (emphasis added). This "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455, 105 S.Ct. at 2774; *see also Viens v. Daniels,* 871 F.2d 1328, 1334–36 (7th Cir.1989). Although the evidence before the disciplinary board must "point to the accused's guilt," *Lenea v. Lane,* 882 F.2d 1171, 1175 (7th Cir.1989), only evidence that was presented to the Adjustment Committee is relevant to this analysis. The complaint alleges that any one of 32 prisoners could have placed the weapons in the vent, but because the complaint does not allege that this fact was known to the defendants, we cannot consider it here.

According to the facts set forth in the amended complaint and its attachments, the evidence before the Adjustment Committee was that six homemade weapons were found in Cell C–227 which was occupied by and under the control of Hamilton and his three cellmates. Thus, on the record before the Adjustment Committee, there was a 25% probability that Hamilton was the owner of the weapons. As the evidence in *Hill,* this evidence "might be characterized as meager" and there is no direct evidence identifying one of the four cellmates as the owner of the contraband. 472 U.S. at 457, 105 S.Ct. at 2775. But given the 25% chance of guilt, "the record is not so devoid of evidence that the find-

ings of the disciplinary board were without support or otherwise arbitrary." *Id.* Since the complaint (and its attachments) establish that the Adjustment Committee's decision was supported by some evidence, it fails to state a claim.

### III.

■ There are two other issues we must resolve. First, Hamilton contends that the district court erred in dismissing his claim that the Adjustment Committee's failure to call the correctional officers involved in the shakedown of his cell as witnesses violated due process. This argument is meritless. As noted above, when consistent with institutional safety and correctional goals, prisoners facing disciplinary proceedings must be given the opportunity to call witnesses. *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979. In this case, the complaint reveals that Hamilton was given the opportunity to call witnesses but failed to do so. The Inmate Disciplinary Report, which Hamilton received but refused to sign, states:

> [Y]ou have a right to ask that witnesses be interviewed and, if necessary in the Committee's judgment, they may be called to testify during your hearing. In addition, you may ask the Committee to question the witness along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Committee.

Hamilton did not, by filling out the space on the ticket or otherwise, request that any witnesses be called. At his hearing, he did state that the officers, if called as witnesses, would corroborate his testimony that the weapons were found in the vent. Even if this was a request to call the officers as witnesses, which we doubt, the Adjustment

**2.** Hamilton also puts great emphasis on his allegation that one of the Adjustment Committee members stated at Hamilton's hearing that he believed Hamilton was innocent of putting the weapons in the vent. But, one member is not the Committee. Also, this does not mean that the Committee member knew that 32 prisoners

had access to the vent or believed that the prison's constructive possession rule was not sufficient evidence of guilt. He may have thought that an occupant of the cell other than Hamilton was the one who put the weapons in the vent.

Committee could properly deny the request as untimely.

We also must decide whether the district court abused its discretion by dismissing the complaint with prejudice. Hamilton would like a chance to amend his complaint a second time. The district court, in a thorough and well-reasoned opinion, articulated several reasons for dismissing the complaint with prejudice: the lawsuit has been on the docket since 1985; Hamilton was assisted by able counsel; and the flaws in the complaint are noncurable. *Hamilton,* 762 F.Supp. at 804 & n. 23. These reasons convince us that the district court did not abuse its discretion. In his original *pro se* complaint filed in 1985, Hamilton stated that 32 inmates had access to the vent. Thus, from at least 1985, Hamilton was aware of the importance of this allegation to his due process claim. Yet, even with the assistance of counsel (who according to the district court has "done him yeoman service," *id.*), Hamilton was unable to allege facts sufficient to overcome a Rule 12(b)(6) motion. Hamilton contends that he needs more discovery; but he has already conducted some discovery (although the extent of that discovery is unclear), and there is no indication that additional discovery would reveal information that could be used to cure the defects in the amended complaint.[3]

### IV.

In his complaint, Hamilton makes allegations which, if true, would bring his guilt into serious doubt. But, although he had the opportunity, Hamilton never presented these claims to the Adjustment Committee—and that is the proper forum for resolving such evidentiary disputes. Hamilton cannot relitigate his guilt in federal court. Our job is simply to ensure that there was "some evidence" to support the *revocation of good time credits.* This is a low standard which was met in this case by the prison's constructive possession rule.

Accordingly, the judgment of the district court is AFFIRMED.

POSNER, Circuit Judge, dissenting.

The amended complaint clearly alleges that the plaintiff told the disciplinary committee that another cell, housing, like his, four inmates, had equal access to the vent in which the weapons were found. The correction officer's "ticket," the only other evidence before the committee, stated only that the weapons had been found in a shakedown of the plaintiff's cell. This was consistent with the weapons' having been found in the vent on which the cell gave and which was accessible from the cell. (In fact what happened, all agree, is that in the course of the shakedown the officer opened the screen covering the vent, looked inside, and found the weapons.) On the record before the committee, the probability that the plaintiff had possessed one or more of these weapons cannot be reckoned as greater than one in eight, or 12.5 percent. That is not my idea of "some evidence," *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773 (1985), unless purely collective guilt is deemed to satisfy due process—which in prison circumstances it might be, cf. *Ustrak v. Fairman,* 781 F.2d 573, 575 (7th Cir.1986), but the defendants do not defend the disciplinary committee's action on that ground. *Hill* itself is distinguishable. The three inmates were seen fleeing the scene of the crime. Each was thus acting guilty; the probability that each *was* guilty was considerable. Here it is entirely possible that only one of the eight inmates who had access to the vent possessed the six weapons, and there is no evidence to suggest that Hamilton was more likely to be that one than any of the seven other inmates were. Nor is it argued that the six weapons are likely to have been jointly owned by all inmates having access to the place where they were kept.

We know in fact that more than eight inmates had access to the vents—32 in

---

**3.** Because we hold that Hamilton's disciplinary proceedings comported with due process, we do not reach the issue of whether the district court properly dismissed Hamilton's claims against

defendants O'Leary and Lane on the additional basis that they were not personally involved in Hamilton's discipline.

all—though how likely it is that a weapon thrown from another floor would have lodged in this second-floor vent is unclear. It is true that the amended complaint does not allege that Hamilton apprised the disciplinary committee of this fact and maybe the members of the committee didn't know it. But any objection based on that point was waived by the defendants in the district court and in this court—which has inexplicably relieved them from the normal consequence of waiver. *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir.1990); *Thomas v. Indiana*, 910 F.2d 1413, 1415 (7th Cir.1990). If all 32 were equiprobable malefactors, then on no interpretation of "some evidence" could Hamilton's punishment stand. I don't think it can stand even if we ignore all but the eight to whom the amended complaint explicitly referred.