**Michael HARMS, Plaintiff,**

v.

**Salvador GODINEZ, Theopolis Smith, Candis Crook, and Jane Doe, Defendants.**

No. 92 C 3168.

United States District Court, N.D. Illinois, E.D.

July 29, 1993.

Michael Harms, pro se.

Kathy D. Twine, Cynthia Y. Brim, Cara LeFevour Smith, Illinois Atty. General's Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Following an incident on January 30, 1992, an Adjustment Committee of the Stateville Correctional Center found inmate Michael Harms guilty of violating Illinois Department of Corrections rules. Mr. Harms contests this finding on the grounds that there was no evidence that he violated the rules. For the reasons stated below, we grant Defendants' Motion for Summary Judgment and dismiss the Complaint with prejudice.

### Background

On January 30, 1992, Harms and five other inmates were working at the commissary at the Stateville Correctional Facility. Early that afternoon, Officer Randall Allen and several other security officers conducted a routine "shake down" of the commissary work area and found $649.78 worth of cigarettes, coffee, and other items bagged with the trash. All six inmates, including Harms, received disciplinary tickets charging them with theft, abuse of privileges and violation of rules.

On February 6, 1992, the Adjustment Committee convened a hearing to review the allegations stemming from this incident. This first hearing was continued to February 18, 1992, because Plaintiff's original disciplinary report lacked specificity. Officer Allen rewrote the report for the second hearing. In his report and in oral testimony, Allen

stated that the stolen goods were found in the work area of the commissary. Harms asserted his innocence and claimed that he had been at the front desk handing out items during the theft. Plaintiff called no witnesses on his behalf.

The Adjustment Committee found Harms and the five other inmate workers guilty of theft and abuse of privileges. Harms was placed in segregation for thirty days and was demoted to "C" grade status as a result of the disciplinary procedure. The Committee's rationale was that: (1) Harms was in the work area; (2) the contraband was found there; and (3) the report of the officer was true.

Harms, proceeding *pro se*, filed a complaint against four of the facility's officers under 42 U.S.C. § 1983, claiming that the Adjustment Committee proceedings violated due process guarantees of the Fourteenth Amendment and certain state regulations.[1] He seeks declaratory and injunctive relief as well as money damages. The Defendants have now moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

### Findings of Fact and Conclusions of Law

As an initial matter, we note that for defendants to prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this stage, we do not weigh evidence or determine the truth of asserted matters. We simply determine whether there is a genuine issue for trial, i.e., "whether a proper jury question was presented." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When the nonmoving party is faced with a properly supported

motion for summary judgment, it may not avoid judgment by resting on its pleadings. If the nonmoving party bears the burden of proof at trial on a dispositive issue, it is required to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' [to] designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). *Pro Se* litigants are, however, not held to the same stringent standards as formally trained attorneys, and their pleadings are to be liberally construed. *Caldwell v. Miller,* 790 F.2d 589, 595 (7th Cir.1986).

### I. Due Process

Harms claims that finding him guilty of involvement in the attempted theft violated his due process rights because there simply was no evidence that he was involved. Defendants, of course, argue that Harms' due process rights were adequately protected. The basic constitutional requirements in this area are well-established. Where a prison disciplinary hearing results in the loss of some statutorily protected right, due process requires that the inmate receive: (1) advance notice of the charges; (2) an opportunity to call witnesses and produce other evidence; and (3) a written statement of the evidence and reasoning relied on for punishment. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974).

Plaintiff does not make any allegation with regard to the first two *Wolff* requirements, and we note that Defendants have satisfied them: Plaintiff received prior notice of the hearings and had an opportunity to present his case. Harms testified at both hearings and declined the opportunities to call other witnesses.

---

1. The Plaintiff's allegations regarding the Illinois Department of Correction Rules are frivolous. Harms alleges that the committee failed to follow Rules 504.80(c), (g), and (j) which require the committee to reveal exonerating evidence, to consider all material presented, to base their decision upon all the relevant evidence and to be reasonably satisfied that the inmate committed the charged offense. *See* 20 Ill.Admin.Code parts 504.80(c), (g), (j). There is nothing in the record to indicate that these Rules were not followed, and we grant judgment to the Defendants on these allegations. Fed.R.Civ.Pro. 56.

Plaintiff's claim involves the third element, namely that the Adjustment Committee Summary must provide a written statement listing the evidence and reasoning upon which the finding of his violation was based. The Summary indicates only that he had access to the contraband, not that he had any involvement with it. Essentially, Harms argues that the Summary provides no evidence at all of his involvement with or possession of the contraband.

The basis for the Committee's finding that Harms was guilty is an Illinois Department of Corrections Rule that states that "every committed person is assumed to be responsible for any contraband ... which is located ... within areas of his housing, work or educational or vocational assignment, which are under his control." 20 Ill.Admin.Code ch. 1 § 504.20 para. E. The issue before us is simply whether reliance on this rule, which essentially holds an inmate liable for constructive, rather than actual, possession of contraband, violates the inmate's due process rights.

The leading case in this area is *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985). In *Hill*, a prison guard heard some commotion and upon investigation discovered a prisoner who had clearly been assaulted. The guard saw three other inmates fleeing the area down an enclosed walkway. No other inmates were in the area. 472 U.S. at 456, 105 S.Ct. at 2774–75.

All three inmates were found guilty of assault by the disciplinary committee and had their good time credits revoked. The revocation was overturned by the Supreme Judicial Court of Massachusetts because it felt that the evidence did not support an inference that more than one of the inmates was in fact the assailant. The Supreme Court reversed. *Id.*

The Supreme Court held that the basis for finding an inmate guilty of a prison rule violation is adequate under the due process clause when the board's findings are supported by some modicum of evidence in the record. *Hill*, 472 U.S. at 455, 105 S.Ct. at 2773–74. Applying that standard, the Court found that the fact that the inmates were seen running from the scene of an assault was sufficient evidence to support a finding of guilty:

> The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made by the disciplinary hearing. Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of the three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.

*Hill*, 472 U.S. at 457, 105 S.Ct. at 2775.

Recognizing that prisoner discipline is not equivalent to a criminal conviction and that the amount of evidence needed to support such a conviction is not required in the prison setting, the Court explained that the "some evidence" standard does not demand an examination of the whole record, an assessment of the credibility of witnesses, or the weighing of evidence. Rather, it is satisfied by any evidence in the record that could support the disciplinary board's conclusion. *Id.* at 455–56, 105 S.Ct. at 2773–75. In *Hill*, three persons ran away from an area where a prisoner had just been assaulted. No others were in the area. Thus, there was "some" evidence that petitioner committed or aided the assault.

Mr. Harms' case is somewhat different. He was working in a secure area in the commissary. Contraband was found in a wastebasket in his work area. Five other inmates, who were also working, also had access to the area in which the contraband was discovered. (All were charged and found guilty.) Harms contends that his case is distinguishable from *Hill* because there is no evidence that he was involved in hiding the contraband. He just happened to be working in an area where it was found, and any one of the five other prisoners could have hidden it there. Thus, unlike *Hill* where three prisoners ran away from an

assault where no other possible perpetrators were present, Harms was simply working in an area with five other inmates and the contraband was found in a waste receptacle. This, according to Harms, proves nothing except that there is one chance in six that he was responsible.

Were we writing on a clean slate, we would be sorely tempted to agree. However, the Seventh Circuit has recently interpreted the *Hill* "some evidence" standard in a case with facts quite similar to the present one. *See Hamilton v. O'Leary,* 976 F.2d 341, 347 (7th Cir.), *reh'g denied* (1992) (*en banc*). In *Hamilton,* a shakedown of the cell the plaintiff shared with three other inmates resulted in the discovery of six contraband weapons. 976 F.2d at 343. All four inmates were charged with rule violations. Before the Adjustment Committee, Hamilton argued that the weapons were found in the air vent, not in his cell and that he was innocent. He also asked why the four inmates in the neighboring cell, who also had access to the vent, were not questioned. Hamilton was found guilty and disciplined. *Id.,* 976 F.2d at 343–44.

Hamilton filed suit in federal court. He argued that finding him guilty merely because he had access to the vent did not satisfy the "some evidence" standard of *Hill* because he was only one of thirty-two inmates in that wing of the prison who had access to the vent. The District Court dismissed the case with prejudice and the Seventh Circuit affirmed. *Hamilton,* 976 F.2d at 347.

The Seventh Circuit agreed with Hamilton that a finding of guilty solely on the basis that he had been only one of thirty-two inmates with access to the vent did not satisfy

the "some evidence" standard of *Hill.* However, the court found that Hamilton had not raised that argument before the Adjustment Committee, who found him guilty on the basis of his being one of just four inmates with access to the vent. *Id.* at 346. The court held that a twenty-five percent, or one-in-four, chance of guilt was "some" evidence under *Hill,* and affirmed the District Court. *Id.* The *Hamilton* majority apparently read *Hill* to stand for the proposition that finding an inmate constructively guilty of a rule violation purely on the basis of his access to or presence in the area where the violation occurred does not violate the due process clause as long as the probability of *actual* guilt is fairly high. *Hamilton,* 976 F.2d at 345 ("The proposition that constructive possession provides 'some evidence' of guilt when contraband is found where only a few inmates have access is unproblematical").

In all candor, we must confess that we are uneasy with the Seventh's Circuit's application of *Hill* to the facts of *Hamilton.* To our eyes, the facts of *Hill* appear essentially different from those in *Hamilton.* In *Hill* the Supreme Court noted that there was at least some evidence of guilt: the inmates were the only ones in the immediate area of a recent assault and were seen fleeing the scene of the crime.[2] In *Hamilton,* however, the only evidence of guilt was based on the likelihood that the inmate *could* have been the owner of the weapons.

Judge Posner, who dissented in *Hamilton,* noted this crucial distinction: "*Hill* itself is quite distinguishable. The three inmates were seen fleeing the scene of the crime. Each was thus acting guilty...." *Hamilton,* 976 F.2d at 347 (Posner, J., dissenting). We find Judge Posner's reading of *Hill* more

---

**2.** Though admission of evidence of flight as probative of knowledge of guilt in a criminal case has been criticized, *see Wong Sun v. United States,* 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 415 n. 10, 9 L.Ed.2d 441 (1963) ("Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion.'"), it has nevertheless been treated as "some" evidence of guilt, especially when it occurred immediately after the crime. *See United States v. Jackson,* 572 F.2d 636, 639 (7th Cir.1978) ("This court has, on numerous occasions, approved the admission of flight evidence under the general rule that flight of the accused may be admissible as evidence of consciousness of guilt and thus of guilt itself). *See, also, United States v. Hampton,* 457 F.2d 299, 303 (7th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972); *United States v. Crisp,* 435 F.2d 354, 359 (7th Cir.1970), *cert. denied,* 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971); *United States ex rel. Miller v. Pate,* 342 F.2d 646, 649 (7th Cir.1965), *rev'd on other grounds,* 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967).

persuasive, and believe it to be the better reading of the case. However, we are not free to pick and choose among various interpretations of *Hill.* To the contrary, we are bound by the result in *Hamilton* and its probability analysis.

Given the majority decision in *Hamilton,* we hold that the Adjustment Committee could properly find Harms guilty. Though the present case presents a one-in-six chance of guilt as opposed to the one-in-four chance found sufficient in *Hamilton,* we see no material difference between the two. If a one-in-four chance of actual guilt does not violate the due process clause, then a one-in-six chance of guilt does not either.

## II. *Qualified Immunity*

■ Even if we were to hold otherwise, however, the Defendants would not be liable for money damages in the present case. Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Sherman v. Four County Counseling Ctr.,* 987 F.2d 397, 401 (7th Cir.1993); *Warlick v. Cross,* 969 F.2d 303, 309 (7th Cir.1992). The Seventh Circuit has developed a two-step analysis in qualified immunity cases. We first determine whether the alleged conduct violated the Plaintiff's constitutional rights, and then, if rights were violated, whether they were clearly established at the time the violation occurred. *Sherman,* 987 F.2d at 401; *Fiorenzo v. Nolan,* 965 F.2d 348, 351–52 (7th Cir.1992); *Auriemma v. Rice,* 910 F.2d 1449, 1453 (7th Cir.1990) (*en banc*), *cert. denied,* —— U.S. ——, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991).

■ The right must be sufficiently particularized to put potential defendants on notice that their conduct is probably unlawful. *Henderson v. DeRobertis,* 940 F.2d 1055, 1059 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992);

*Hall v. Ryan,* 957 F.2d 402, 404 (7th Cir. 1992). Thus, qualified immunity is a defense "contingent on the state of the law." *Elliott v. Thomas,* 937 F.2d 338, 341 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 973, 117 L.Ed.2d 138 (1992). The focus of this defense is on the "objective legal reasonableness" of the actions taken by the Defendants. *Creighton,* 483 U.S. at 639, 107 S.Ct. at 3039. Until a particular constitutional right has been stated so that reasonably competent officers would agree on its application to a given set of facts, it has not been clearly established. *Sherman,* 987 F.2d at 401; *Henderson,* 940 F.2d at 1059; *Auriemma,* 910 F.2d at 1453.

■ In the present case, even assuming that a finding of constructive guilt in the present case, where there is only a one-in-six chance of actual guilt, violates the due process rights of the Plaintiff, qualified immunity shields the Defendants from monetary damages. In light of *Hill* and *Mason v. Sargent,* 898 F.2d 679, 680 (8th Cir.1990) (constructive possession of contraband found in shared locker did not violate due process), we can hardly say that it was "clearly established" that finding the Plaintiff guilty violated his constitutional rights. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. We cannot say that it was unreasonable for an official to have understood that there was "some evidence" to find Harms guilty of violating the Department of Correction Code even where five other inmates had access to the area.

## III. *Declaratory and Injunctive Relief*

Mr. Harms also seeks declaratory and injunctive relief, claims which are not barred by immunity. *See Sato v. Kwasny,* No. 93 C 0037 at 8, 1993 WL 157461 (N.D.Ill. filed May 11, 1993) (Plunkett, J.). However, because we find no violation of state or federal law, we decline to issue a declaratory judgment to the contrary.

■ As to Mr. Harm's request for injunctive relief, we also decline his invitation and grant summary judgment for the Defendants. Mr. Harms seeks an injunction ordering the Defendants and their successors in office to refrain from "impossing [sic] dis-

cipllanary [sic] action on the plaintiff without due process of law and procedures that comply with plaintiff's constitutional rights and state law." (Compl. at 7.)

Few would argue that prison officials should be free to conduct their business in any other manner. However, we are without power to issue such an injunction even if we were so inclined: Mr. Harm's disciplinary proceedings are over, and there is no indication he will again be charged with a violation of prison rules and be subject to discipline. Simply put, there is no longer any controversy to which an injunction could speak. Therefor, we may not issue the injunction he requests. *See Los Angeles v. Lyons,* 461 U.S. 95, 105, 103 S.Ct. 1660, 1666–67, 75 L.Ed.2d 675 (1983) (plaintiff's standing for injunction prohibiting police from using chokeholds depended on whether he was likely to suffer future injury from use of chokehold); *Robinson v. City of Chicago,* 868 F.2d 959, 966–67 (7th Cir.1989) (extending *Lyons* to requests for declaratory relief); *Alber v. Illinois Dep't of Mental Health,* 786 F.Supp. 1340, 1353 (N.D.Ill.1992) (plaintiff seeking equitable relief under section 1983 must show a real threat that the plaintiff will be wronged again in the same way); *Davis v. Harshbarger,* No. 93 C 1021 at 5–7, 1993 WL 189961 (N.D.Ill. filed May 28, 1993) (Plunkett, J.) (court may not presume plaintiff will be exposed to illegal conduct in the future); *Sato v. Kwasny,* No. 93 C 0037 at 7, 1993 WL 157461 (N.D.Ill. filed May 11, 1993) (Plunkett, J.) (same).

### Conclusion

For the reasons stated above, we grant Defendants' Motion for Summary Judgment as to all claims in the Complaint. Judgment to be entered on behalf of the Defendants.