Steven **HUFFMAN**, Petitioner,

v.

Daniel **McBRIDE**, and Indiana Attorney General, Respondents.

No. 3:93cv0492AS.

United States District Court, N.D. Indiana, South Bend Division.

Jan. 27, 1994.

On Motion to Compel Compliance March 29, 1994.

---

Steven Huffman, pro se.

Laurel Twinney, Indianapolis, IN, for respondents.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On July 14, 1993, *pro se* petitioner, Steven Huffman, an inmate at the Westville Correctional Center, filed a petition seeking relief under 28 U.S.C. § 2254. The response filed by the respondents on October 29, 1993, demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). The petitioner filed a response on November 12, 1993.

This § 2254 petition concerns prison disciplinary proceedings. The petitioner was charged and found guilty of engaging in trafficking and was deprived of ninety (90) days of earned credit time. *See IC 35-44-3-9.*

On April 21, 1993, a prison official believed that he observed the petitioner and an employee of the Lakeside Correctional Unit "had possibly been in the E-1 staff restroom/locker room together." Communication and interaction of this nature between prison staff or officials and inmates is prohibited. Both parties were apparently warned of this prohibition. Both denied any involvement. Subsequently, a prison investigator obtained the phone records of the prison employee. In the Report of Conduct, the facts are alleged in the following fashion:

Superintendent Timothy Todd received a telephone call from Karl Swihart, an Internal Affairs Officer at the Indiana State Prison, in reference to Catherine Myers and Steven Huffman communicating with each other via telephone. A copy of Catherine Myers' home telephone bill was obtained and it showed that twenty one calls had been placed to her residence from LCU dormitory offender phones [between March 20, 1993 and March 29, 1993.] These calls ranged in time from 1 minute to 119 minutes, with an average time of 51 minutes. On April 21, 1993, [Catherine] Myers was presented with the evidence and admitted to her involvement in this incident. Ms. Myers also stated that it was offender Huffman that had placed the calls to her residence.

*See Conduct Report.*

The Conduct Adjustment Board at the Lakeside Correctional Unit held a hearing on April 23, 1993. The petitioner pleaded not guilty to the charge of engaging in trafficking and also testified at the hearing. The petitioner testified that he had no knowledge of anyone calling Catherine Myers. The CAB report also indicates that the petitioner had a lay advocate. No other witnesses testified for the petitioner at the hearing. The Conduct Adjustment Board found the petitioner guilty of trafficking and issued the following explanation of the proceeding:

Based on conduct and offender statement and statements from the lay advocate offender is guilty of trafficking specifically giving messages.

*See Respondents' Brief* Exhibit D.

Following the CAB hearing, the petitioner exhausted the applicable administrative remedies as quantified in *Markham v. Clark*, 978 F.2d 993 (7th Cir.1992). In seeking a writ of habeas corpus, the petitioner asserts several claims. First, the petitioner claims that he was denied due process by the Conduct Adjustment Board. Next, the petitioner maintains that the Disciplinary Review Manager failed to consider Catherine Myers' letter denying that she received any telephone calls from the petitioner. Finally, the petitioner asserts a claim based on the sufficiency of the evidence.

In this case, the court is required to determine whether the Constitution of the United States was violated in a disciplinary proceeding before a Conduct Adjustment Board (CAB) under the mandates of *Hamilton v. O'Leary,* 976 F.2d 341 (7th Cir.1992), *Forbes v. Trigg,* 976 F.2d 308 (7th Cir.1992), *Miller v. Duckworth,* 963 F.2d 1002 (7th Cir.1992), and *Harris v. Duckworth,* 909 F.2d 1057 (7th Cir.1990). *See also Billops v. Wright,* 803 F.Supp. 1439 (N.D.Ind.1992). The constitutional dimensions of this court's review are outlined in *Supt., Mass. Corr. Institution at Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). It also needs to be said that this proceeding is brought under 28 U.S.C. § 2254, and not under 42 U.S.C. § 1983.

In addressing the petitioner's claim based on the sufficiency of the evidence, the Attorney General explains that "[u]nder the Adult Disciplinary Policy Procedures ("ADPP"), the offense of Engaging in Trafficking (# 238) is a Class B Offense...." *See Return to Show Cause* at 7. The Attorney General explains further that "[t]he ADPP uses the definition of trafficking set forth in the Indiana Code Section 35–44–3–9...." *Id.* Indiana Code 35–44–3–9 defines that offense as follows:

A person who, without the prior authorization of the person in charge of a penal facility, knowingly or intentionally:

(1) delivers, or carries into the penal facility with intent to deliver, an article to an inmate of the facility; or

(2) carries, or receives with intent to carry out of the penal facility, an article from an inmate of the facility;

commits trafficking with an inmate, a class A misdemeanor.

*See I.C.* 35–44–3–9.

In evaluating this issue, this court has found three cases involving the statute in the state courts of Indiana. *See State of Indiana v. Owings,* 622 N.E.2d 948 (Ind.1993); *Perkins v. State,* 483 N.E.2d 1379 (Ind.1985); and *Sureeporn Roll v. State,* 473 N.E.2d 161 (Ind.App.1985).

In *Owings, supra,* the Indiana Supreme Court indicated that the defendant "delivered balloons filled with cocaine to her son while he was an inmate...." *Id.* In *Perkins, supra,* the court indicated that the defendants "carried marijuana into the prison." *Id. Sureeporn Roll, supra,* involved a similar arrangement. In *Lockert v. Faulkner,* 843 F.2d 1015 (7th Cir.1988), the Seventh Circuit evaluated an inmate's right to marry and in the process discussed *I.C.* 35–44–3–9. Specifically, the court explained:

Lockert, convicted in Indiana of felony murder, has been serving a life sentence at the Indiana State Prison in Michigan City since February, 1975. While working at the prison infirmary in 1979, Lockert met Patricia Samplawski, a nurse at the infirmary. Lockert and Samplawski became friends and began to correspond by mail; their friendship soon blossomed into a romance.

In July, 1979, prison authorities accused Lockert and Samplawski of "trafficking." "Trafficking" is a crime in Indiana that involves *delivering an article to a prisoner or carrying an article from a prisoner outside the prison without the prison administration's permission.* See Ind.Code Ann. § 35–44–3–9 ... While the term "trafficking" conjures up images of drugs and weapons, the articles Lockert and Samplawski passed were more mundane: Samplawski passed letters and eight-track tapes to Lockert, and Lockert passed a legal brief and an eight-track tape to Samplawski. Although the State filed no criminal charges against Lockert or Samplawski, prison authorities fired Samplawski and placed Lockert in disciplinary segregation for six months because of the "trafficking" incidents.

*Id.* (emphasis provided).

In order to protect due process rights in the context of a prison disciplinary proceedings, the Supreme Court in *Supt., Mass. Corr. Institution at Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), outlined and explained the requisite standards for evaluating the proceedings. In *Hill,* a prison guard discovered an inmate who had been assaulted and observed three

inmates fleeing the area. All three inmates were found guilty of assault based on the prison guard's report of the event. Clearly, the prison disciplinary officials could fit the abovementioned facts into a plethora of scenarios. In resolving this quandary, the *Hill* Court explained:

> The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made by the disciplinary hearing. Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of the three inmates as the assailant, the record is not so devoid of evidence so that the findings of the disciplinary board were without support or otherwise arbitrary.

*Id.* at 457, 105 S.Ct. at 2775.

In finding that the evidence adduced at the prison disciplinary hearing met the due process requirement, the Court concluded:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require the examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455–56, 105 S.Ct. at 2773–74 (citations omitted).

Recently, in *Lasley v. Godinez*, 833 F.Supp. 714 (N.D.Ill.1993) and *Harms v. Godinez*, 829 F.Supp. 259 (N.D.Ill.1993), Judges Aspen and Plunkett outlined the judicial parameters of the sufficient evidence concepts as elucidated in *Hill, supra.* Both Judges Aspen and Plunkett reviewed the recent Seventh Circuit opinion on this issue written by Judge Manion in *Hamilton v. O'Leary,* 976 F.2d 341 (7th Cir.), *reh'g denied,* (1992) (*en banc*). In *Harms,* Judge Plunkett explained:

> In Hamilton, a shakedown of the cell the plaintiff shared with three other inmates resulted in the discovery of six contraband weapons. 976 F.2d at 343. All four inmates were charged with rule violations. Before the Adjustment Committee, Hamilton argued that the weapons were found in the air vent, not in his cell and that he was innocent. He also asked why the four inmates in the neighboring cell, who also had access to the vent, were not questioned. Hamilton was found guilty and disciplined. Id., 976 F.2d at 343–44.

> Hamilton filed suit in federal court. He argued that finding him guilty merely because he had access to the vent did not satisfy the "some evidence" standard of Hill because he was only one of thirty-two inmates in that wing of the prison who had access to the vent. The District Court dismissed the case with prejudice and the Seventh Circuit affirmed. Hamilton, 976 F.2d at 347.

> The Seventh Circuit agreed with Hamilton that a finding of guilty solely on the basis that he been only one of thirty-two inmates with access to the vent did not satisfy the "some evidence" standard of Hill. However, the court found that Hamilton had not raised that argument before the Adjustment Committee, who found him guilty on the basis of his being one of just four inmates with access to the vent. Id. at 346. The court held that a twenty-five percent, or one-in-four, chance of guilt was "some" evidence under Hill, and affirmed the District Court. Id. The Hamilton majority apparently read Hill to stand for the proposition that finding an inmate constructively guilty of a rule violation purely on the basis of his access to or presence in the area where the violation occurred does not violate the due process clause as long as the probability of actual guilt is fairly high. Hamilton, 976 F.2d at 345 ("The proposition that constructive possession provides 'some evidence' of guilt when contraband is found where only a few inmates have access is unproblematical").

In all candor, we must confess that we are uneasy with the Seventh's Circuit's application of Hill to the facts of Hamilton. To our eyes, the facts of Hill appear essentially different from those in Hamilton. In Hill the Supreme Court noted that there was at least some evidence of guilt: the inmates were the only ones in the immediate area of a recent assault and were seen fleeing the scene of the crime. In Hamilton, however, the only evidence of guilt was based on the likelihood that the inmate could have been the owner of the weapons.

Judge Posner, who dissented in Hamilton, noted this crucial distinction: "Hill itself is quite distinguishable. The three inmates were seen fleeing the scene of the crime. Each was thus acting guilty...." Hamilton, 976 F.2d at 347 (Posner, J., dissenting). We find Judge Posner's reading of Hill more persuasive, and believe it to be the better reading of the case. However, we are not free to pick and choose among various interpretations of Hill. To the contrary, we are bound by the result in Hamilton and its probability analysis.

Id. at 263–64.

Here, the CAB found the petitioner guilty of trafficking and the CAB indicated that such a charge reflects I.C. 35–44–3–9. If the petitioner is charged with a violation of the abovementioned statute, then there are is an element contained in the statute that remains a mystery. Specifically, the statute indicates an article must be delivered to an inmate or received from an inmate. Equally important to note is that the abovementioned cases construing I.C. 35–44–3–9 make it abundantly clear that an article must be delivered or received. This court finds no information in the record on an article for purposes of asportation of any kind.

Here, it is clear that recent Seventh Circuit caselaw on this issue requires this court to find that the petitioner's due process rights have been contravened. The CAB found the petitioner in violation of a statute which requires that an article be delivered or received. The CAB makes no mention of any article. It is very possible that the petitioner may have violated another provi-

sion of the ADPP, but not this one. Here, the charge and the evidence do not match; and therefore, this court finds that the petitioner's due process rights were violated.

A careful review to this record has established a violation of the Constitution of the United States with reference to the CAB proceedings here involved. Therefore, this court remands this case back to the Westville Correctional Center for further proceedings in compliance with this opinion. The petition is, therefore, **GRANTED.**

**IT IS SO ORDERED.**

### ON MOTION TO COMPEL COMPLIANCE

On July 14, 1993, *pro se* petitioner, Steven Huffman, an inmate at the Westville Correctional Center, filed a petition seeking relief under 28 U.S.C. § 2254. This court granted that writ on January 27, 1994. On February 22, 1994, the petitioner filed a Motion to compel Westville to comply with this court's order. This court denies the motion to compel. This court is cognizant of the difficulties of running the daily affairs of the prison, however, it would behoove the prison authorities to comply with this court's order at some reasonable date in the near future.

IT IS SO ORDERED.