NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 29, 2012[*]
Decided December 13, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-1645

| | |
|---|---|
| VICTOR A. SALAZAR, JR.,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>WILLIAM K. WILSON,<br>    *Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division.<br><br>No. 3:11-CV-113 RM<br><br>Robert L. Miller, Jr.,<br>*Judge.* |

## O R D E R

Victor Salazar, an Indiana inmate, was disciplined with the loss of 15 days' good time after he signed for an envelope marked "legal mail" that contained two mobile phones concealed inside a hollowed-out brief. He challenged that sanction by petitioning for a writ of habeas corpus, see 28 U.S.C. § 2254, which the district court denied. We affirm.

The background facts are not disputed. Salazar is serving a 30-year term on state drug convictions incurred in Tippecanoe County in 2003. An envelope addressed to him

---

[*]After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

was received at his prison. It was stamped as legal mail and identified the sender as the clerk of the superior court for Lake County, not Tippecanoe County. Staff x-rayed the parcel, saw the phones, and notified Salazar that he had received legal mail which was being held for his signature. Salazar went to his counselor's office and signed a receipt that included the name and address of the sender.

What happened next is the point of contention. Salazar's counselor, who drafted the conduct report accusing him of possessing an electronic device, see IND. DEP'T OF CORR., ADULT DISCIPLINARY PROCEDURES POLICY NO. 02-04-101, § B-207 (2004), says in his brief narrative that he gave the envelope to Salazar and that the phones "were discovered" on inspection of the document inside. In a separate report the counselor adds that Salazar denied ownership of the envelope only after being told that he was in trouble because it contained mobile phones. Two other employees were present when Salazar signed for the envelope. One of them, an investigator from Internal Affairs, recounts in his report that Salazar looked at the receipt before signing and then watched as his counselor removed the phony brief and tried to page through it. Only then, according to the investigator, did Salazar deny ownership, cross out his signature on the receipt, and explain that his legal mail would be coming from a different county. The other witness to the delivery, a sergeant, agreed that Salazar had signed the receipt but, in two written statements, contradicted the investigator and said that Salazar disclaimed ownership as soon as he saw the sender's address on the unopened package. In his own written statement, Salazar explains that he had signed the receipt without reading the sender's address but recognized as soon as the envelope was presented that it was not from the clerk's office in Tippecanoe County. He rejected the envelope before it was opened, he says, and thus never possessed the phones.

The Disciplinary Hearing Board rejected this defense and found Salazar guilty based on "the conduct report and all staff statements." The Board reasoned that Salazar "did sign for the legal mail" and thus took responsibility for the contents of the envelope. Salazar appealed to the prison superintendent, who rejected his contentions that the Board's written decision is "inadequate" and its finding of guilt not supported by sufficient evidence of actual or constructive possession. The Final Reviewing Authority also rejected these claims but, after noting that Salazar's name is in the phony brief, modified the Board's decision to add a charge of "conspiring with another," though without increasing the punishment. See IND. DEP'T OF CORR., ADULT DISCIPLINARY PROCEDURES POLICY NO. 02-04-101, § B-240 (2004).

Inmates have a liberty interest in earned good time, which prison administrators cannot revoke without advance notice of the charges, a written statement explaining the discipline, and "some evidence" supporting the decision. *Superintendent, Mass. Corr. Inst.,*

*Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). In his § 2254 petition Salazar challenges the sufficiency of the evidence. He also presses his contention that the Board's written decision is inadequate; Salazar assumes that the Board disbelieved he had refused to accept the envelope before it was opened and, in his petition, argues that the Board was required to explain this credibility choice. He also claims that he was not given notice and an opportunity to defend against the conspiracy charge. The district court rejected each of these contentions, which Salazar repeats on appeal.

As the Board's written decision explains, Salazar's signature on the legal mail receipt was itself "some evidence" of possession. Salazar never had physical control of the phones, so the question becomes one of constructive possession. See *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009). But a disciplinary hearing is not a criminal trial, see *Wolff*, 418 U.S. at 556, and the level of evidence required to satisfy due process is much lower, see *Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) (concluding that "some evidence" supported disciplinary charge where conduct report showed that prisoner was one of four inmates with access to vent containing contraband weapons); *Mason v. Sargent*, 898 F.2d 679, 680 (8th Cir. 1990) (concluding that "some evidence" supported disciplinary charge even though another inmate admitted placing contraband clothing in their shared locker). Because of its privileged status, legal mail provides an opportunity for inmates to attempt to smuggle contraband into prison. See *Fontroy v. Beard*, 559 F.3d 173, 178 (3d Cir. 2009) (random searches of legal mail revealed contraband); *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 812 (10th Cir. 2007) (contraband syringe found in prisoner's legal papers). Although Salazar presumes that the Board made an unexplained choice to credit some witnesses instead of others, the Board's explicit rationale is that Salazar took responsibility for the envelope when he signed the receipt, making the timing of his attempted rejection irrelevant. As the evidence shows, Salazar signed the receipt even though it identifies the sender as a court in Lake County, where, as Salazar admits, none of his legal mail originates. This evidence supports the Board's conclusion, thus satisfying the requirement of due process. See *Hill*, 472 U.S. at 455–56.

We also reject Salazar's claim about the conspiracy charge added by the Final Reviewing Authority. The modification did not violate Salazar's right to due process; the additional charge relies on the same evidence introduced at the disciplinary hearing and Salazar's defense applied equally to both charges. See *Northern v. Hanks,* 326 F.3d 909, 911 (7th Cir. 2003) (explaining that inmate was not denied due process by substitution of different charge during administrative appeal because investigative report given to inmate before disciplinary hearing placed him on notice that he could be subject to additional charge); *Holt v. Caspari*, 961 F.2d 1370, 1373 (8th Cir. 1992) (concluding that prison disciplinary committee did not deny inmate due process by elevating charge from

possession of "contraband" to "dangerous contraband" since both charges shared same factual basis). Salazar's conduct report informed him of the facts underlying both charges: Someone on the outside tried to smuggle contraband phones into the prison by concealing them in a parcel disguised as legal mail in Salazar's name. Salazar contends that if he had known about the conspiracy charge at his initial hearing he would have insisted on inspecting the bogus brief to show that his name had been added to a document unrelated to his own criminal case. But no one was arguing that the brief was *legitimate*; the point made by the reviewing official is that Salazar's name is on the document, and that fact has never been contested by Salazar.

AFFIRMED.